CHIEF JUSTICE PRYOR
delivered the opinion oe the court.
In March, 1871, an act of the legislature was passed, entitled “An act to prohibit the sale of intoxicating liquors in the county of Bullitt.” (2 Session Acts 1871, p. 321.) The first section of the act provides “ that it shall be unlawful, after this aet takes effect, for the County Court of Bullitt County, or any person or persons, to grant a license to any person or persons to sell by wholesale or retail any brandy, whisky, or intoxicating liquors, or a mixture thereof, within the limits or jurisdiction of Bullitt County.” After making certain exceptions and annexing penalties for the violation of the law, it is further provided, in the fourth section, “ that this act shall take effect whenever it shall be ratified by a majority of the voters of said county, voting thereon at any election in said county, and a poll shall be opened in every election precinct at the next August election, for its adoption or rejection, and the county court clerk shall prepare a column in the poll-books in said county for taking said vote, and the result shall be certified to the county court and entered upon the records,” etc. An election was held under the provisions of the act, and a majority of the votes cast against the right to grant a license for the sale of intoxicating liquors.
In September, 1875, the county court of the county assumed the power to grant a license to sell liquor to the appellee, and. having sold under this authority, when indicted for the offense, he justified under the license, and now claims that the county court had full power to grant the privilege.
*221 The right of the county court is based upon an act of the legislature, approved January 26, 1874, and known as the local-option law, under which a vote was taken, and resulted in favor of the right to grant license, and one of the principal questions in the case is, “did the act of January, 1874, repeal the local law of 1871, or authorize the voters of Bullitt County to again pass upon the question ?” Before proceeding to this inquiry, it is first argued by counsel for the appellee, that the act of March, 1871, is unconstitutional, for the reason that in authorizing a vote- to be taken under its provisions, the legislative power of the state over the subject, so far as it applies to the county of Bullitt, has been transferred by the acts in question to the voters of that county, and this argument is made to rest upon the peculiar language of the act.
It is essential under our form of government, says Mr. Cooley, that every legislative enactment must be complete in itself, and take effect as a law at the time it leaves the hands of the legislative department, and if the act we are considering has no inherent force or vitality as a law when approved by the executive, it can not become a law by reason of a popular vote approving its provisions. Numerous authorities may be found denying the power of the legislature to give to the people of a particular locality the right by a popular vote to control the sale of intoxicating liquors under the provisions of what is commonly called local-option laws. Many of these decisions have been reconsidered, and now the decided weight of authority sustains the constitutionality of such legislation.
"While the law-making power can not delegate to the people the right to assemble and frame such laws as may be deemed best for their own interests, and to adopt them by a popular vote, it is not inconsistent with our representative system of government to consult the popular will as to the propriety of a law already enacted. As said in the case of Smith v. Jonesville, 26 Wis., “The legislature is not attempt *222 ing in such a case to delegate its authority to a new agency, but the trustee (the representative) is taking the opinion of the principal upon the necessity, policy, or propriety, of an act which is to govern the principal himself.”
The legislature, by the passage of the act we are considering, had already determined its expediency, and we perceive no reason why such a local law, affecting alone the people of Bullitt County, should not be submitted to them, and its going into operation made to depend upon a vote in favor of the measure. That a statute may be conditional, and its taking effect made to depend upon some subsequent event, is now well settled. (Cooley’s Const. Limitations, page 142.)
It is said, however, the language of the act is, that it shall not tahe effect until it is ratified by a majority of the voters of the county, and therefore it is the constituent making the law and not the representative. If such language found in this enactment is to render the law unconstitutional, it is in effect to deny the power of the legislature to refer any question of local government or even police regulation to those directly interested in this character of legislation. The popular will expressed for or against the provisions of the law does not in any manner destroy or affect the legislative intent. The law was enacted in order that the people of Bullitt County might accept or reject its provisions, and it was in force and effectual as a law for that purpose when it left the hands of the executive with his approval. The law was then perfect' in all' its parts, and could be enforced without any other legislation. This character of legislation has been sanctioned by the courts of this state and indulged in by the representatives of the people since, the formation of the state government.
The construction of the language of the act before us is that it is to tahe effect like any other law. When it passed the legislature and was signed by the executive, it then became a law, and by reason of the law the people interested in its pas *223 sage were authorized to vote for or against its provisions; that its operation is made to depend on the popular will is a part of the law itself, and its going into operation, on the contingency the people voted for it, was the legislative will on the subject.
In the case of Marshall v. Donovan, reported in 10 Bush, 681, the legislature passed an act for the benefit of the common schools of Bracken County, and provided that in any common - school district in the county, in which the clearly-ascertained will of the people shall be in favor of a district tax for the purpose of purchasing a site for a school-house, or building.a new school-house, or repairing an old one, etc., the levying of such a tax therein shall be held lawful, etc. This act wás held to be constitutional, although the right to levy a tax for school purposes was made to depend upon the vote of the people in favor of the measure. This vote of the people was but carrying into effect the legislative will with reference to the subject, by the local agencies selected by the law for that purpose, and whose interests were to be directly affected by the provisions of the enactment. The operation of this law depended alone on the vote of the people, and this event or contingency happening, the law was as effectual as if the legislature had fixed upon that day for the enforcement of its provisions. (Bull v. Read and others, 13 Grattan.)
The right of local taxation for purposes of internal improvement in aid of corporations, in nearly every case in this state, has been made to depend upon the contingency of a popular vote, and this character of legislation has been sustained by repeated adjudications of this court. The charters of municipal corporations, the extension of city boundaries, the creation of new counties, have all been made the subject of legislation and submitted to the people, of the localities interested, for their approval or rejection, and to decide this act unconstitutional would be to change not only the legislative policy of the state, but to overturn the entire judicial *224 determinations of the courts of the state upon the question involved. The people are not called upon to decide at the polls whether the act authorizing the vote is a law, but whether or not they will accept its provisions, the legislature having determined that its going into operation shall depend upon the result of a popular vote.
We see no reason why, in a case like this, involving a question of local interest and of mere police regulation, the popular will should not be consulted, and on a question made the subject of this enactment it is eminently just and proper.
It is needless to refer to the many decisions sustaining this character of legislation. Mr. Cooley, in his work on Constitutional Limitations, after collating all the authorities on the subject, concludes by saying that the decided weight of authority is in support of legislation of this-nature. We see nothing in the language used in the enactment that would authorize the conclusion that it was not a perfect and complete law after its passage and approval in the mode prescribed by the constitution.
The remaining question to be decided is, did the passage of the local-option law in January, 1874, repeal or nullify this local act of March, 1871 ? That some of the provisions of the general law may be in conflict or inconsistent with the local law is no argument in favor of the repeal of the local law. If the local law is repealed it is by implication only, and repeals by implication are never favored, and particularly in regard to a local statute, that can in no manner obstruct the enforcement of the general law. This statute can be enforced without impairing the efficacy of the general law, or affecting the rights of the public, and having been enacted at the instance of those interested, and not being in conflict with the constitution, must be held to stand unrepealed; and if the voice of the people is to be again consulted upon the question, the remedy *225 is through the legislative department of the state, and not the judicial.
The judgment of the court below is therefore reversed, and cause remanded for further proceedings consistent with this opinion.