## I. M. SCHULHERR *v.* R. M. BORDEAUX, SHERIFF.

1. CONSTITUTIONAL LAW. *Election. Failure to provide for contest. Section 39, article iv, constitution, construed.*
    Section 39, article iv, of the constitution of this State, which provides that "the legislature shall provide by law for determining contested elections" is addressed solely to the legislature and mandatory upon it, and an act of the legislature authorizing an election will not be annulled by this court because of the failure of the legislature to make provision for contesting such election.

2. SAME. *Legislative act. Operative on future contingency.*
    The operation of an act of the legislature may be made dependent upon a future contingency, without being unconstitutional.

3. SAME. *Liquor license. Local option. Case in judgment.*
    The provision in an act of the legislature that the sale of vinous and spirituous liquors shall be permitted or prohibited within any county, as the voters of such county may decide at an election to be held for that purpose, is not such a delegation of legislative authority to the voters as to render the act unconstitutional.

APPEAL from the Circuit Court of Lauderdale County.

HON. S. H. TERRAL, Judge.

On March 11, 1886, the legislature passed an act entitled "An Act for preventing the evils of intemperance by local option in any county in the State by submitting the question of prohibiting the sale of intoxicating liquors to the qualified voters of each county, to provide penalties for its violation, and for other purposes."

This act, in § 1, provides "That upon application by petition signed by one-tenth of the voters who are qualified to vote for members of the legislature in any county in this State, addressed to the board of supervisors of said county, it shall be the duty of the board of supervisors to order an election to be held at places of holding elections for members of the legislature in such county, to take place within forty days after the reception of the petition, to determine whether or not such spirituous liquors as are mentioned in the sixth section of this act shall be sold within the limits of any such county. * * *"

Section 6 provides " That if a majority of the legal votes cast at

any election held under the provisions of this act shall be against the sale, it shall not be lawful for any person, within the limits of such county, to sell or barter for valuable consideration, either directly or indirectly, or give away, to induce trade at any place of business, or furnish at other public places, any alcoholic, spirituous, vinous, malt or intoxicating liquors, or intoxicating bitters, or other drinks, which if drunk to excess will produce intoxication, under the penalties hereinafter prescribed ; but if a majority of the votes cast at any such election shall be for the sale of such liquors, then license to sell the same may be ordered by the board of supervisors of the county at a regular term, or by the proper municipal authorities, to any male person over the age of twenty-one years, when such applicant is a resident in the county where such liquors are to be sold, who, in the opinion of the authority granting such license, shall be of a good moral character and a sober and suitable person to receive such license; by the recommendation to that effect in writing, signed by at least twenty-five real estate owners in such district or town.     *   *   *   * "

The act makes provision for the holding of such elections, but does not make any special provision for contesting them.   It further specially provides that the laws in relation to liquor licenses in force at the time of its passage, Code of 1880 and amendments thereto, shall remain in full force till the elections provided for in this act should be held.   On June 8, 1886, an election was held in Lauderdale County under and in accordance with the provisions of this act, which resulted in a majority " against the sale."

On June 23, 1886, I. M. Schulherr filed a petition for a mandamus to compel R. M. Bordeaux, sheriff of Lauderdale County, to issue to him a license to retail liquors in Lauderdale County, in accordance with the provisions of the Code of 1880 and amendments thereto, alleging a full compliance with their terms, and claiming that such laws were still in force in Lauderdale County, and that the act of March 11, 1886, was unconstitutional and void.

The defendant, Bordeaux, appeared and demurred to the petition.   The court sustained the demurrer, and the petitioner appealed.

*Woods, McIntosh & Williams,* for the appellant.

1. The legislature wholly failed to make any provision for contesting any election which might be held in pursuance of this act. The 39th section of the 4th article of our State constitution declares that " The legislature *shall* provide by law for determining contested elections." Now, what was the object of the convention in framing this 39th section of article iv, and what was the great end to be subserved thereby? Clearly and unquestionably the framers of the constitution designed that in every election law, affecting the general public, at least, the legislature should provide, by appropriate legislation, ample and adequate means for easily and surely preserving the purity of the ballot-box, and for certainly and speedily rendering effective the will of the people as expressed at the polls. If these were the objects to be attained by this 39th section of article iv, why shall that law which wholly disregards this plain mandate of the constitution, and fails to provide any method of preserving the purity of the ballot-box, and of rendering effective the will of the people as expressed at the polls, be held less obnoxious to the charge of unconstitutionality than a law which should definitely declare in its body that there should be no method of contesting any election held pursuant to its provisions? See 14 Ohio 353; 13 Wisconsin 264–5; Cooley, Const. Lim. 78–9.

It is the duty of the legislature to make suitable provision, in every law, general in its character, at any rate, for carrying into effective operation this plain requirement of the 39th section of the 4th article of our State constitution, and any neglect or refusal or omission of that body to make proper provision for rendering effective this salutary and essential command is as clearly a violation of the constitution as would be the enactment of a statute positively prohibited by that instrument. *Brien* v. *Williamson,* 7 Howard 17.

2. The local option law of this State, now under discussion, is wholly unlike any or all the acts construed and passed upon by the several courts of last resort in other States, on which opposing counsel rely, and their weight in this court can hardly be appreciable. In the cases which, on the surface, seem most strongly

opposed to our views, the acts passed upon authorized and required the people, at fixed times, and under existing laws, to meet at their voting precincts, and determine by ballot whether license to retail intoxicating liquors should be granted. It must be manifest to the enlightened mind that the upholding of such laws as constitutional would not be even persuasive to support an argument designed to maintain the constitutionality of our new local option law. The features of the laws being utterly dissimilar, the reasoning, and the conclusion of the courts on that reasoning, would be of little worth here.

The leading case in this country, holding that legislation even of that form is unconstitutional, is the well-considered one of *Rice* v. *Foster*, 4 Harrington 479. The unanswerable reasoning of the court in that earliest decision exhausted the argument and left nothing further to be said on the subject. Nothing since has been advanced, nothing can be advanced, to shake that opinion from its immovable foundation. Following that in order, and maintaining, like it, that laws submitting even the question of license or no license, under existing law, to popular vote, are unconstitutional, in that they are really only attempts to delegate the lawmaking power, we find the elaborate case of *Parker* v. *Commonwealth*, 6 Pa. 517. If precedent is authority, we might confidently rest our case upon these two ably argued opinions. But we are not left only to the persuasive force of a judgment of a foreign court on this proposition. We beg the careful attention of the court to the fact that more than a quarter of a century ago our own high court of errors and appeals (in one of the most exhaustively and learnedly argued and patiently and completely considered cases to be found in our reports), in the case of *Alcorn* v. *Hamer*, 38 Miss. 652, reviewed these two very cases of *Rice* v. *Foster* and *Parker* v. *Commonwealth*, and clearly and unhesitatingly put this court on record as unqualifiedly indorsing the correctness of those decisions.

In *Barto* v. *Himrod*, 4 Selden, the court of appeals of New York takes the identical position assumed in the Delaware, Pennsylvania, and Mississippi cases already noticed.

To the like effect is *State* v. *Field*, 17 Mo. 529 ; *Singer* v. *Hen-*

*neman,* 39 Wis. 508; *Locke's Appeal,* 72 Pa. 497, particularly; *The State* v. *Weir,* 33 Iowa 134, and note of editor; and *Ex parte Wall,* 48 Cal. 279; *Lambert* v. *Lidwell,* 21 Am. Rep. 411.

*Walker & Hall,* on the same side.

There is a palpable distinction between a legislative enactment vital, *per se,* and self-operative, but which may be defeated by the performance of a condition, and a legislative enactment which has no inherent vitality, and is wholly inoperative until some prescribed condition, independent of legislative will, is performed. In the one case vitality is destroyed, in the other it is imparted. In the one case there is a condition precedent, in the other a condition subsequent. The legislative enactment under consideration has a condition precedent—the petition of one-tenth of the voters of a county. It is their volition which gives the law vitality. There is no legislative expression touching the subject-matter of the enactment.

The cases of *State* v. *Wilcox,* 42 Conn. 364; *Boyd* v. *Bryant,* 35 Ark. 69; *State* v. *Cooke,* 24 Minn. 247; *Commonwealth* v. *Waller,* 24 Bush (Ky.) 218, while they recognize and announce the doctrine that legislative power cannot be delegated in all its length and breadth, make a similar application thereof to *Locke's Appeal.*

The cases of *State* v. *Wier,* 33 Iowa 134; *Gubrick* v. *State,* 5 Iowa 492; *Ex parte Wall,* 48 Cal. 279; *Lambert* v. *Lidwell,* 62 Mo. 188; *Barto* v. *Himrod,* 4 Seld. 403; *Rice* v. *Foster,* Harr. 470; *Parker* v. *Com. P.,* 6 Barr, Pa. St. 507, make a different application of the doctrine, holding a submission of the acts therein considered to popular approval an unwarranted delegation of the lawmaking power.

We submit that a delegation to local self-governments does not stand upon the same footing as a delegation of the lawmaking power to the people at large. For example, in the case of *State* v. *Cooke,* 24 Minn. 247, in which was being considered a statute conferring upon the legal voters of a city the power to determine whether license for the sale of liquors should be granted or not, it was held that such a delegation was proper, and that the legislature

when it confers a power upon municipal corporations may designate by whom it shall be exercised, whether by a particular officer or by the electors at large.

In like manner the court, in the cases of *State* v. *Wilcox, supra; People* v. *The City of Butte,* 4 Mont. 179; *Ex parte Wall, supra,* and *Commonwealth* v. *Blackington,* 24 Pick. 352, recognize the universally conceded authority of the legislature to grant franchises to municipal corporations and to delegate therein the powers to make laws for its own self-government, inclusive of the regulation or prohibition of the liquor traffic, and that said powers so delegated might be exercised in the manner designated, whether by submission to popular vote or otherwise.

But we deem it unnecessary to collate the decisions of other courts and attempt to reconcile their conflicting views so long as we have so ably considered a case. as *Alcorn* v. *Hamer,* 38 Miss. 653, decided by our own supreme court.

*T. H. Woods,* of counsel for the appellant, made an oral argument.

*J. S. Hamm,* for the appellee.

The act of March 11, 1886, was a constitutional exercise of legislative power. It does not refer to the qualified voters of a county the question whether or not the act shall be a law. The act was perfect and complete as it came from the hands of the legislature. The act simply makes its operation, its going into effect, in any county dependent upon a condition, and that condition is the vote of the legal voters of that county. The act leaves it to the qualified voters of any county to determine, not whether it shall be lawful to sell liquors without a license, but whether the contingency shall arise in which license may be granted.

The question left to the qualified voters is one of police; a question affecting the people in particular localities—the people residing in the several counties and subdivisions of the State. It is left to the qualified voters of each county to determine for themselves by a majority vote, to be ascertained by an election held and regulated under proper authority, whether or not they wish intoxicating liquors to be sold within the limits of such county.

To sustain the act in submitting this question to the qualified

voters of a county for their determination, the authorities are numerous and pointed. See *Locke's Appeal*, 72 Pa. St. 491; s. c., 13 Am. Rep. 716; *State, Sandford, Relator*, v. *The Court of Common Pleas of the County of Morris*, 36 N. J. 72; s. c., 13 Am. Rep. 422; *State.* v. *Wilcox*, 42 Conn. 364; s. c., 19 Am. Rep. 536; *Fell* v. *The State*, 42 Maryland 71; s. c., 20 Am. Rep. 83; *Commonwealth* v. *Weller*, 14 Bush 218; s. c., 29 Am. Rep. 407; *Boyd* v. *Bryant*, 35 Ark. 69; s. c., 37 Am. Rep. 6; *State* v. *Cooke*, 24 Minn. 247; s. c., 31 Am. Rep. 344; Cooley on Constitutional Limitations, 5th ed., p. 148, top, and cases cited in note 8, p. 148; *Alcorn* v. *Hamer*, 38 Miss. 652; *Williams* v. *Cammack*, 27 Miss. 209; *Barnes* v. *Board of Supervisors of Pike County*, 51 Miss. 305; *Commonwealth* v. *Kimball*, 35 Am. Dec.; notes to this case, 331, 332, 333, 334, 337.

The decided weight of authority sustains the constitutionality of laws giving to the people of a particular locality the right of a popular vote to control the sale of intoxicating liquors under the provisions of what is called local option laws. *Commonwealth* v. *Weller*, 14 Bush 218; s. c., 29 Am. Rep. 407; *Boyd* v. *Bryant*, 35 Ark. 69; s. c., 37 Am. Rep. 6; *Locke's Appeal*, 72 Pa. St.; s. c., 13 Am. Rep. 716; *State* v. *Wilcox*, 42 Conn. 364; s. c., 19 Am. Rep. 536; *Fell* v. *The State*, 42 Maryland 71; s. c., 20 Am. Rep. 83; *State* v. *Cooke*, 24 Minn. 247; s. c., 31 Am. Rep. 344; Cooley Const. Lim. 143, and note 8; *Commonwealth* v. *Kimball*, 35 Am. Dec., note, p. 337.

In the enactment of such laws no power is delegated which the constitution requires the legislature to exercise. Indeed, the power delegated is not legislative in its character, and so may be properly exercised by the municipalities and local functionaries to whom it is committed. They have the means of exercising it more intelligently than the legislature itself. *State* v. *Wilcox*, 42 Conn. 364; s. c., 19 Am. Rep. 536; Cooley on Const. Lim., 5th ed., pp. 225, 226; *Commonwealth* v. *Weller*, 14 Bush. 218; s. c., 29 Am. Rep. 407; *State, Sandford, Relator*, v. *The Court of Common Pleas of the County of Morris*, 36 N. J. 422; s. c., 13 Am. Rep. 422;

*Commonwealth* v. *Kimball*, 35 Am. Dec., note, p. 337; Cooley Const. Lim. 148, 5th ed., and note 8.

"A vote in reference to the sale of intoxicating liquors differs in no respect from a vote whether a new township shall be continued or annulled, or from a vote to determine whether a seat of justice shall be continued where it is, or be removed to another place; or from a vote for or against a subscription by a city or county to a railroad company; or from a vote of a district for or against the consolidation of it with a city. Yet in all these instances it has been decided that the determination of the questions by a vote of the people interested in them, and an enactment of law dependent on the result of this vote, are not a delegation of the lawmaking power to the people, but a submission only of the expediency of the proposed measure." 13 Am. Rep. 719.

That provision of the constitution requiring the legislature to provide for contest of elections has no reference to elections of the sort provided for by the act of 11th March, 1886. It has reference to contest of elections between rival candidates. Furthermore, this provision is merely directory. See *Groves* v. *Slaughter*, 15 Peters, in which it was held by the Supreme Court of the United States that that clause of the constitution of 1832, declaring that slaves shall not be introduced into the State as merchandise or for sale after        day of      , was merely directory. See also *Swan* v. *Buck*, 40 Miss.

That provision of the constitution which requires the returns of all elections to be made to the Secretary of the State does not affect the election held on the 8th June, 1886, under the law of March 11, 1886.

*J. S. Hamm* also made an oral argument.

*E. Watkins*, on the same side.

The constitutionality of this law is assailed upon the ground that it is a delegation of the lawmaking power to the people, when that power is vested alone by our constitution in the legislature. The rule, as I understand it, is that, if the vote to be taken makes or defeats the law, then it comes clearly under the restriction of the constitution, and is void. With the act of our State legislature

under consideration that is not the case, for when voted upon, it becomes a perfect law, and the terms and restrictions are well defined, be it what it may. It merely takes the voice of the legal voters as to what they deem expedient, and if a majority vote " against the sale," no license shall be granted; but, on the contrary, if a majority vote " for the sale," license shall be granted under the penalties and restrictions therein imposed. Whether the majority vote is for or against the sale, the law at all times is the same.

The power to regulate the sale of intoxicating liquors, even by ordinances, is expressly conferred upon municipal governments upon the theory that it is a police regulation, and why should the same power not be lawfully conferred upon the county at large? If one is not supported by the constitution the other cannot be. On this point the honorable court is referred most respectfully to the case of *Sanford* v. *The Court of Common Pleas of the County of Morris*, 36 N. J. 72, reported in 13 Am. Rep. 427 and 428.

The court in *Commonwealth* v. *Bennett*, 108 Mass. 27, says many successive statutes of the commonwealth have made the lawfulness of sales of intoxicating liquors to depend upon licenses from the selectmen of towns or commissioners of counties, and such statutes have been held to be constitutional.

It is equally within the power of a legislature to authorize a town by vote of the inhabitants or a city by vote of the city council to determine whether the sale of particular kinds of liquors within its limits shall be permitted or prohibited.

This subject, although not embraced within the ordinary power to make by-laws and ordinances, falls within the class of police regulations which may be intrusted by the legislature by express enactment to municipal authority. In this case the court cites quite a list of authorities.

This decision was reaffirmed and approved by the same court in the case of the *Commonwealth* v. *Dean*, 110 Mass. 357.

The Act of March 11, 1886, is simply contingent upon the determination of the fact whether licenses are needed or desired in certain counties. It is only intended to take the sense of the people,

which may differ in different localities. And may I ask, why shall not the legislature take the sense of the people? Is it not the right of the legislature to seek information of the condition of the locality or of the public sentiment there.

The constitution grants the power to legislate but it does not confer knowledge. Are not public sentiment and local circumstances just subjects of inquiry? Public sentiment or local condition may make the law unwise, inapt, or inoperative in some places and otherwise elsewhere.

Instead of being contrary to it, it is consistent with our free institutions to take the public sense in many instances, that the legislature may faithfully represent the people and promote their welfare.

This act now in force, to wit, the act of March 11, 1886, did not spring from the vote but the vote sprung from the law, and the law alone declares the consequence to flow from the vote. *Locke's Appeal,* 72 Pa. 492; also 13 Am. Rep. 716. In the case of *The State* v. *Wilcox,* 42 Conn. 364, we find the court upholding the constitutionality of such laws as the act of March 11, 1886.

I respectfully refer the court to the case of *Fell* v. *The State,* 42 Md. 71, also 20 Am. Rep. 83, and various authorities there cited.

The people at the polls were not called upon to decide whether the act authorizing the vote is a law, but whether or not they will accept its provisions, the legislature having determined that its going into operation shall depend upon the result of a popular vote. *Commonwealth* v. *Weller,* 14 Bush. 218; 29 Am. Rep. 407. In support of the doctrine established in this case I beg to refer the court also to *State* v. *Cook,* 24 Minn. 247; 31 Am. Rep. 344; also *Boyd* v. *Bryant,* 35 Ark. 69, 37 Am. Rep. 96.

In *Barnes* v. *Board of Supervisors of Pike County,* 51 Miss. 307, we have a decision of the supreme court fully settling an act of the legislature similar to the act of March 11, 1886, in all of its features depending upon the vote of the people as to its expediency.

*S. B. Watts,* on the same side.

1. Is there a delegation to the people of "legislative power" by this act? I respectfully submit that there is not. The act is a complete law, as complete as the legislative charter of a municipal corporation. It leaves nothing to the voters of the various counties to do but to decide whether they will, in the first place, put the law in force in their respective counties, for the mere holding of the election puts the law in operation, without regard to the result; and secondly, whether they, the legal voters, desire that the articles mentioned shall be sold in their county for two years. The result of the vote may be different at different elections. It is merely a police regulation.

The question as to the constitutionality of acts of the legislature involving the principles of "local option" has been decided by this court in as many as four cases. I refer to the cases of *Barnes* v. *Board of Supervisors*, 51 Miss. 307; *Alcorn* v. *Hamer*, 38 Miss. 745; *Williams* v. *Cammack*, 27 Miss. 221. In the case of *Rohrbacher* v. *City of Jackson*, the same question is raised, and the majority of the court sustain the act of 1874, though it goes further than any other law upon the subject, in this State, and confers this "lawmaking power" largely upon a class of citizens who are not legal voters, but whose right to be heard upon the question was recognized by the legislature and the highest judicial authority in the State. Even the dissenting opinion approves the decision of the majority of the court so far as the point involved in this case is concerned. 51 Miss. 735.

The great weight of authority in this country sustains the constitutionality of similar legislation. *People* v. *City of Butte*, 47 Am. Rep. 346; *State* v. *Cook*, 31 Am. Rep. 344; *Commonwealth* v. *Weller*, 29 Am. Rep. 407; *Boyd* v. *Bryant*, 37 Am. Rep. 6; *Locke's Appeal*, 13 Am. Rep. 716; 19 Am. Rep. 536; 20 Am. Rep. 83.

2. The petition of appellant charges that the act in question is unconstitutional in that it fails to provide for the contest of any election that may be held under the same, and there being no statutory law in this State under which a contest of an election held under said act could be instituted, while the constitution (article

iv, § 39) requires the legislature to provide by law for determining contested elections. It is quite clear to my mind that this provision of the constitution has reference to elections for officers provided for by the constitution, and for such contests the legislature has made provision, and that constitutional requirement has been met, even if it does apply to " elections " under the act in question.

CAMPBELL, J., delivered the opinion of the court.

If " An Act for preventing the evils of intemperance by local option, etc.," approved March 11, 1886, is not a law, the mandamus should be awarded. If valid, but there are certain objectionable provisions not involving the whole act, the mandamus was properly denied. The act is assailed by argument in this case on five grounds, only two of which go to the entire act, and these only need be disposed of now, for they are decisive of this case. They are:

1. That the act violates § 39, article iv, of the constitution of this State, which provides, "The legislature shall provide by law for determining contested elections," because no provision exists for contesting the elections contemplated by this act.

2. The act is not a declaration of the will of the legislature, which is the sole repository of legislative power, but a delegation of its authority to the voters.

Upon the first it may perhaps be said that the elections for determining contests about which the constitution declares the legislature shall provide, are elections contemplated and provided for by the constitution; but if all elections are held to be embraced in the direction to the legislature, and it is its duty to provide for contesting all elections, and the constitutional requirement be mandatory, it does not follow that all elections are to fail and be held nugatory because of the failure of the legislature to make provision for contesting them. We are not willing to concede the power of one of the departments of the State government to wreck and destroy it by non-action. Suppose the legislature had failed to provide by law for contesting any elections, would any contend that

the elections failed of their effect, and the popular will should be defeated, either by leaving offices vacant, or by continuing the incumbents in office until the constitutional requirement should be obeyed ?

This would involve consequences not to be tolerated, and is suggestive of the unsoundness of any view which makes them possible.

We reject any such view, and hold that the provision of the constitution under consideration, like many others in it, is addressed to the legislature and mandatory upon it, but that it ends with that department, and the courts should not annul acts of the legislature on the subject of elections because of its failure to observe the requirement addressed to it as to providing for contesting elections.

On the question of the right to make an act of the legislature to depend for its operation on a future contingency, argument was exhausted long ago, and the principle established by oft-repeated examples and by adjudication in this State and elsewhere in great numbers, that this may be done without violating the constitution. It is idle to talk of precedent and subsequent contingencies or conditions, between defeating the operation of an act, or putting it in operation. There is no such distinction. It is merely fanciful and deceptive. It is for the legislature in its discretion to prescribe the future contingency, and it is not an objection on constitutional grounds that a popular vote is made the contingency.

The legislature has plenary power over the matter of licensing or not licensing the traffic in liquors, and may in its discretion fix the terms on which a license may be granted. It may make it depend on the petition of freeholders, householders, heads of families, voters, women, widows, wives, mothers, or maidens, or what it pleases. We know no limit to its discretion as to this.

The purpose and scope of the act is to take the popular sense whether or not the traffic shall be licensed by counties and by vote, instead of by supervisors' districts and towns and by petition, as before, and the act contains provisions for these new conditions of obtaining licenses or denying them.

The law existing before, and this act together, evince the will of

the legislature to be that the sale of liquors shall be prohibited or permitted, and licenses granted, if at all, as the voters of a county may decide at an election to be held for the purpose, if applied for, and if no election is held, the matter is to remain as before.

The act is a valid law and must be upheld as such.

*Affirmed.*