### FOUTS *v.* HOOD RIVER.

81 Pac. 370; 1 L. R. A. (N. S.) 483.

TIME WHEN LOCAL OPTION LAW TOOK EFFECT—CONSTITUTIONALITY.

1. The local option law adopted in June, 1904 (printed in Laws 1905, pp. 41-50), providing that upon the filing of a petition of a designated kind the county court shall order an election to determine whether the sale of intoxicating liquors shall be permitted or prohibited in the political subdivisions designated in the petition, and that if the vote is against permission the prohibition shall take effect on the first day of July next succeeding, is a general act, which became a law pursuant to proclamation,* and is not within the prohibition of Const. Or. Art. I, § 21, providing that no laws "shall be passed the taking effect of which shall be made to depend upon any authority, except as provided" in said constitution, though the operation of the prohibitory feature is conditioned on the vote in the subdivisions designated by the petition.

LOCAL OPTION LAW—SPECIAL ACT PUNISHING CRIMES—REGULATING PRACTICE IN COURTS OF JUSTICE.

2. The local option law adopted in Oregon by popular vote in 1904 (Laws 1905, p. 41, c. 2) is not a special or local law for the punishment of crimes and misdemeanors, or regulating the practice in courts of justice, as prohibited by Const. Or. Art. IV, § 23, subds. 2 and 3.

LOCAL AND SPECIAL LAWS AS TO SALES OF LIQUORS.

3. As Const. Or. Art. IV, § 23, does not prohibit special or local laws concerning the sale of intoxicating liquors, there seems to be no limitation on the power to legislate locally on that subject, so that the local option act adopted in 1904 (Laws 1905, pp. 41-50) is not void because it may operate in only some districts.

From Wasco: W. L. BRADSHAW, Judge.

Action by P. F. Fouts to recover money from the City of Hood River. From a judgment as prayed defendant appeals.

AFFIRMED.

---

*NOTE.—The time when initiated laws become in force and effect is determined by gubernatorial proclamation: Laws 1903, pp. 244, 249, § 9. As to the date of the proclamation concerning the local option law adopted by the people on June 6, 1904, see Laws 1905, p. 50, note.    REPORTER.

For appellant there was a brief and an oral argument by
*Mr. John McCourt,* to this effect.

I. The Constitution of Oregon prohibits the putting of laws
into effect, upon the vote of the people, except upon a vote of all
the people of the State in the manner pointed out by the initia-
tive and referendum amendment to the constitution. Therefore
what is known as the local option law is void, and cannot be put
into effect upon the authority of a vote in a county, subdivision
of a county or a precinct: Const. Or. Art. I, § 21; Art. IV, § 1,
as amended by the initiative provision.

II. Courts may examine the proceedings of constitutional con-
ventions to ascertain the meaning of constitutional provisions:
*Opinion of Justices,* 126 Mass. 557; *Wisconsin Cent. R. Co.* v.
*Taylor,* 52 Wis. 38 (8 N. W. 833); *State* v. *Parler,* 52 S. C. 207
(23 S. E. 651); *State* v. *Norman,* 16 Utah, 457 (52 Pac. 986);
Cooley, Const. Lim. (6 ed.), 75; and in like manner may resort
to histories of the times with a view of ascertaining the objects
and purposes of provisions under consideration: *People* v. *Pot-
ter,* 47 N. Y. 375; *Maxwell* v. *Dow,* 176 U. S. 531 (44 L. Ed.
597); *Fox* v. *McDonald,* 101 Ala. 51 (21 L. R. A. 529, 13 So.
416, 46 Am. St. Rep. 98).

III. Section 21 of Article I of our constitution was designed
to prohibit the taking effect of prohibitory liquor laws upon the
authority of a popular vote: Journal of the Constitutional Con-
vention of Oregon, as published 1882, pp. 24, 27, 35, 38, 44, 52,
59, 60, 61, 66 and 77.

IV. The local option law does not take effect until it has been
voted upon, and not then unless the county court makes an order
putting it into effect: Local Option Law (Laws 1905), pp. 41,
43, 46, §§ 3 and 10.

For respondent there was a brief and an oral argument by
*Mr. William H. Wilson,* to this effect.

The only propositions discussed by counsel for appellant in
his brief which we controvert are: 1st. That Section 21, Article
I, of the Constitution of Oregon, imposes a limitation in the
enactment of general laws that does not apply to state consti-
tutions generally; and, 2d. That the local option law does not take

effect until voted upon, and not then unless the county court makes an order to that effect. We submit that these are not sound propositions of law.

On behalf of respondent we respectfully submit the following points and authorities.

1. The proper construction of Section 21 of Article I of the Constitution of Oregon is the same that is given to state constitutions generally, to the effect that legislative authority cannot be delegated: Locke, Civ. Govt. 142; Cooley, Const. Lim. 163; *Arms.* v. *Ayers,* 192 Ill. 601 (85 Am. St. Rep. 357, 58 L. R. A. 277, 61 N. E. 851); *Dowling* v. *Lancashire Ins. Co.* 92 Wis. 63 (31 L. R. A. 112, 65 N. W. 738); *Bradshaw* v. *Lankford,* 73 Md. 428 (25 Am. St. Rep. 602, 11 L. R. A. 582, 21 Atl. 66); *State* v. *Weir,* 33 Iowa, 134 (11 Am. Rep. 115); *Ex parte Wall,* 48 Cal. 279 (17 Am. Rep. 425); *Willis* v. *Owen,* 43 Tex. 41; *Farnsworth Co.* v. *Lisbon,* 62 Maine, 451.

2. The local option law became a law and took effect when the same was adopted by a majority of the voters at the June, 1904, election and the result thereof was ascertained and determined: Sutherland, Stat. Const. 68; *Locke's Appeal,* 72 Pa. St. 495; *Weir* v. *Gram,* 37 Iowa, 653; *Santo* v. *State,* 2 Iowa, 165 (63 Am. Dec. 487); *Dalby* v. *Wolf,* 14 Iowa, 229; *State* v. *Forkner,* 94 Iowa, 1 (28 Am. St. Rep. 206, 62 N. W. 683); *Savage* v. *Commonwealth,* 84 Va. 619 (5 S. E. 565); *Commonwealth* v. *Bennett,* 108 Mass. 27; *Fell* v. *State,* 42 Md. 71 (20 Am. Rep. 83); *Hammond* v. *Haines,* 25 Md. 541 (90 Am. Dec. 77); *Garrett* v. *Aby,* 47 La. Ann. 618 (17 So. 238); *Anderson* v. *Commonwealth,* 76 Ky. 485; *Groesch* v. *State,* 42 Ind. 547; *Ginz* v. *State,* 44 Ind. 218; *State* v. *Wilcox,* 42 Conn. 394; *Slate* v. *Cooke,* 42 Minn. 247 (7 L. R. A. 121, 44 N. W. 7); *Paul* v. *Gloucester County,* 50 N. J. Law, 585 (1 L. R. A. 86, 15 Atl. 272).

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

This is an action by P. F. Fouts to recover against the City of Hood River a proportionate amount of plaintiff's license tax for the unexpired term for which license was issued to him to engage in the occupation of liquor dealer within the city, cut

short by an order of prohibition made under the local option act. Plaintiff had judgment, and defendant appeals.

The single question presented in this case is whether what is known as the "Local Option Act" (Laws 1905, p. 41, c. 2), initiated with and adopted by the people in June, 1904, is constitutional. It is urged by the appellant that it is not for the reason that by its terms it is made to take effect, if at all, upon the popular vote of the locality or localities within which it is sought to have it apply or become operative. This feature, it is urged, is inimical to Section 21, Article I of the Constitution of Oregon, which reads as follows (omitting the proviso): "No ex post facto law, or law impairing the obligations of contracts, shall ever be passed, nor shall any law be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this constitution." The cardinal provisions of the act necessary for us to take note of now are as follows: "Whenever a petition therefor signed by not less than 10 per cent of the registered voters of any county in the State, or subdivision of any county, or precinct of a county, shall be filed with the county clerk of such county in the manner in this act prescribed, the county court of such county shall order an election to be held at the time mentioned in such petition, and in the entire district mentioned in such petition, to determine whether the sale of intoxicating liquors shall be prohibited in such county or subdivision of such county or in such precinct": Laws 1905, p. 41, § 1. "The petition therefor shall be filed with the county clerk not less than thirty nor more than ninety days before the day of election. In every county, subdivision of county, or precinct thereof, that shall return a majority vote for prohibition in November, 1904, the law shall take effect on the first day of January, 1905. In all succeeding elections, the law shall take effect on the first day of July following the day of election": Laws 1905, pp. 41, 43, § 3. Only qualified electors are permitted to vote at such elections. Ample provisions are then made for holding elections under the act. On the tenth day after any election so held the county clerk is required to take to his assistance two justices of the peace, and proceed to open the returns, and make an abstract of the vote for the information of

the county court; and the court is required on the eleventh day after the election, or as soon thereafter as practicable, to hold a special session, and, if a majority of the votes thereon in the county as a whole, or in any subdivision of the county as a whole, or in any precinct in the county, are for prohibition, it shall immediately make an order declaring the result of such vote, and absolutely prohibit the sale of intoxicating liquors within the prescribed limits, except for the purposes and under the regulations specified in the act, until such time as the qualified voters therein at a regular election held for the purpose by a majority decide otherwise, and thereafter it shall be unlawful to sell, exchange or give away any intoxicating liquor within the territory included within said prohibitory order, except as in the act provided. By section 11 (page 47) it is further provided that if a majority voting at any election held under the act vote against prohibition, the court shall make an order declaring the result, and have the same enrolled in its records. Further provision is made that after the election has been held and the result declared no subsequent election shall be held before the second calendar year thereafter, and that, when such subsequent election results against prohibition, then that the court shall enter an order setting aside the previous order enforcing it. A penalty is denounced against violations of the act.

There exist among the earlier adjudications directly opposing opinions as to the constitutionality of a statute which has been referred to the people to determine whether it shall become a law or not under constitutions vesting legislative authority merely in a legislative assembly, without other provisions qualifying or limiting such authority: *Rice* v. *Foster,* 4 Har. (Del.) 479; *Maize* v. *State,* 4 Ind. 342; *Santo* v. *State,* 2 Iowa, 165 (63 Am. Dec. 487); *Geebrick* v. *State,* 5 Iowa, 491; *Mayor* v. *Clunet,* 23 Md. 449; *People* v. *Collins,* 3 Mich. 343; *Barto* v. *Himrod,* 8 N. Y. 483 (59 Am. Dec. 506); *Railroad Co.* v. *Commissioners,* 1 Ohio St. 77; *Parker* v. *Commonwealth,* 6 Pa. 507 (47 Am. Dec. 480); *Bancroft* v. *Dumas,* 21 Vt. 456; *State* v. *Parker,* 26 Vt. 357; *Bull* v. *Read,* 13 Grat. 78. As if to set the principle at rest by explicit declaration, our constitution has provided in Section 21 of Article I: "Nor shall any law be passed, the taking effect

of which shall be made to depend upon any authority, except as provided in this constitution." Indiana has the same provision in her constitution, which has there received judicial construction, not fully, but in a measure, to the purpose that a law made to take effect or not, dependent upon the popular will or vote of the people, is inimical to the clause, as being made to take effect by dependence upon other authority than that provided in the constitution: *Maize* v. *State,* 4 Ind. 342. This, we take it, should be so upon principle. Under our form of government the people have delegated to the legislative assembly, the lawmaking body, the power and authority to enact laws. The legislature must itself exercise the power. It cannot delegate it to any other authority. Since the adoption of the initiative and referendum amendment· to the constitution, however, the people have reserved to themselves the power to initiate an act and to adopt or reject it by popular vote, and a bill adopted by the legislature may be referred to the people for their ratification; but the mode in this instance is the measure of the power. But where an act comes from the legislative assembly it may be affirmed, we think, under the clause of the constitution above quoted that that body cannot leave it to a vote of the people to determine whether or not it shall become a law, because the taking effect thereof is thereby made to depend upon an authority other than that provided for in the constitution. The proposition seems so clear that it is unnecessary to go further with the demonstration.

The pivotal and cardinal question here is whether the present legislation has been made by the act itself to take effect—that is, to become a law—dependent upon a vote of the people. It may be assumed, as counsel for appellant asserts, that the act is general, as· contradistinguished from local or special, and such appears really to be its purpose and intendment. It might be further observed, however, that the subject-matter thereof does not fall within the category of cases concerning which local or special legislation is inhibited by Section 23 of Article IV of the Constitution of Oregon. In the case of *Maize* v. *State,* 4 Ind. 342, a law similar in its provisions to this one was declared inimical to the Indiana constitution, but it was not on account

[32—46 Or.]

of the clause we now have under consideration alone, but as read in connection with another clause, which provided that, "whenever a general law can be made applicable, all laws shall be general and of uniform operation throughout the State"; the court regarding the subject as matter for general and uniform legislation, and not local or special. In a much later case from the same State (*Lafayette, M. & B. R. Co.* v. *Geiger,* 34 Ind. 185), where was considered a law providing for the submission to the people of a county or township whether a tax should be levied and an appropriation made to aid in railroad construction, and wherein was not involved the requirement that the law should be of general application, the court held it to be valid and operative, notwithstanding a contention that it was made to take effect upon an authority otherwise than as provided in the constitution. The Maize case was distinguished upon the ground that the subject there treated of was matter for general legislation, while the act then under consideration did not fall within such classification. A similar act, applying to incorporated cities, authorizing an issue of bonds to pay for subscriptions to stock of a railroad company to aid in the construction of the road upon a petition of a majority of the resident freeholders therein, had been theretofore held valid in *Thompson* v. *City of Peru,* 29 Ind. 305, although the act was general, the power being conferred upon all cities. By a still later case (*Groesch* v. *State,* 42 Ind. 547), involving a statute whereby the issuance of a license was made to depend upon securing a majority of the legal voters in the township or ward of a municipality, it was determined that the law was general, and of uniform operation throughout the State, and that it took effect by force of its enactment by the legislature, and not by authority of a majority of the legal voters in the locality where sought to be invoked. These are the Indiana cases bearing upon the question, and are noticed particularly as our constitution is the same as hers touching the taking effect of an act.

Other cases from elsewhere hold that a law similar in its provisions to the one under consideration does not take effect or become a law by reason of the popular will, but that it is a law perfect in all its parts as it comes from the hands of the legis-

lative assembly; that the election is prescribed by the law, not by the people, to determine its application and limitation; and that the expressed will of the people is but an appropriate contingency upon which the law shall depend for its operation. We cannot better state or discuss the doctrine involved than by quoting from the opinion of Mr. Justice AGNEW in *Locke's Appeal,* 72 Pa. 491 (13 Am. Rep. 716). The act there considered was by nature purely local, affecting only the twenty-second ward in the City of Philadelphia. He says: "What did the legislature, in this section, submit to the people, and what did they not submit? This is quite as clear as any other part of the act. Each elector is to vote a ticket for license or against license. He is allowed by the law to say, 'I am for the issuing of license,' or 'I am against the issuing of licenses,' and thus to express his judgment or opinion. But this is all he was permitted by law to do. He declared no consequences, and prescribed no rule resulting from his opinion. Nor does the majority of the votes declare a consequence. The return of a majority is but a mere numerical preponderance of votes, and expressed only the opinion of the greater number of electors upon the expediency or inexpediency of licenses in this ward. When this is certified by the return, the legislature, not the voters, declare 'it shall (or it shall not) be lawful for any license to issue for the sale of spirituous liquors.' Thus it is perfectly manifest this law was not made, pronounced, or ratified by the people; and the majority vote is but an ascertainment of the public sentiment— the expression of a general opinion—which, as a fact, the legislature has made the contingency on which the law shall operate. When the law came from the halls of legislation it came a perfect law, mandatory in all its parts, prohibiting in this ward the sale of intoxicating liquors without license, commanding an election to be held every third year to ascertain the expediency of issuing licenses, and, when the fact of expediency or inexpediency shall have been returned, commanding that licenses shall issue or shall not issue. Then what did the vote decide? Clearly, not that the act should be a law or not be, for the law already existed. Indeed, it was not delegated to the people to decide anything. They simply declared their views or wishes,

and when they did so it was the fiat of the law, not their vote, which commanded licenses to be issued or not to be issued. * * So long, therefore, as the legislature only calls to its aid the means of ascertaining the utility or expediency of a measure, and does not delegate the power to make the law itself, it is acting within the sphere of its just powers." This case overrules the earlier case of *Parker* v. *Commonwealth,* 6 Pa. 507 (47 Am. Dec. 480), which held to a contrary opinion.

The identical principle is aptly stated and avowed as sound by Mr. Justice WAGNER, speaking for the court, in *State ex rel.* v. *Wilcox,* 45 Mo. 458, 464. He says: "Now, the legislature cannot propose a law, and submit it to the people to pass or reject it by a general vote. That would, indeed, be legislation by the people. But the proposition cannot be successfully controverted that a law may be passed to take effect on the happening of a future event or contingency. The future event—the happening of the contingency, or the fulfillment of a condition—affords no additional efficacy to the law, but simply furnishes the occasion for the exercise of the power. The law is complete and effective when it has passed through the forms prescribed for its enactment, though it may not operate, or its influence may not be felt, until a subject has arisen upon which it can act. In the case we are now considering the act took effect with the other laws contained in the statutes. It was passed according to the prescribed forms designated in the constitution. Its enactment did not depend upon any popular vote, but parties to be affected by it were at liberty to accept the privileges granted, and incur the burdens and obligations it would impose, as their interest or will should dictate. If they elected not to avail themselves of its privileges, it did not in the least impair its force. It still stood a valid enactment on the statute book. If they organized under it, they were entitled to the benefit of its provisions; but in either event the law remained the same. There is no pretense, therefore, for saying that the law is objectionable because it depends for its efficacy on the vote of the people. This point must be ruled against the plaintiff in error." So, in the case of *Fell* v. *State,* 42 Md. 71, 85 (20 Am. Rep. 83), involving almost an identical statute with our own, it was declared

that the question was not a new one in that State; the court further saying: "Now, what has been delegated to the voters by this act of the assembly? Certainly not the power to make the law, or to repeal existing laws. They are called on by the first section simply to express, by their ballots, their opinion or sentiment as to the subject-matter to which the law relates. They declare no consequences, prescribe no penalties, and exercise no legislative functions. The consequences are declared in the law, and are exclusively the result of the legislative will. The act of assembly is 'a perfect and complete law as it left the halls of legislation and was approved by the Governor'; but by its terms it was made to go into operation in any district upon the contingency of a majority of the legal voters within the district being ascertained to be in favor of the prohibition contained in the second section. The question before us therefore resolves itself simply into this: May the legislature constitutionally enact a law, and make its operation depend upon the contingency of the popular vote?" Answering the question, it was resolved in the affirmative, and to the same effect is a more recent case in New Jersey, involving a similar act: *Paul* v. *Gloucester County*. 50 N. J. Law, 585 (15 Atl. 272, 1 L. R. A. 86). So, also, in Iowa: *State* v. *Forkner,* 94 Iowa, 1 (62 N. W. 772, 28 L. R. A. 206).

See, also, as announcing the same principle in that State, *Dalby* v. *Wolf,* 14 Iowa, 228, and *Weir* v. *Cram,* 37 Iowa, 649. Two earlier cases holding to the doctrine for which the appellant contends, are distinguished, namely, *Santo* v. *State,* 2 Iowa, 165 (63 Am. Dec. 487), and *Geebrick* v. *State,* 5 Iowa, 491. We may remark also that the case in 5 Iowa was made to turn as well upon the constitutional provision that all acts of a general nature shall have uniform operation, which it was held the act there considered did not have. For other cases in harmony with the view entertained in Locke's Appeal, see *Cincinnati R. Co.* v. *Clinton County,* 1 Ohio St. 77; *Boyd* v. *Bryant,* 35 Ark. 69 (37 Am. Rep. 6); *State* v. *Wilcox,* 42 Conn. 364 (19 Am. Rep. 536); *Caldwell* v. *Barrett,* 73 Ga. 604; *Commonwealth* v. *Weller,* 77 Ky. 218 (29 Am. Rep. 407); *Gayle* v. *Owen County Court,* 83 Ky. 61; *Commonwealth* v. *Bennett,* 108

Mass. 27; *Commonwealth* v. *Dean,* 110 Mass. 357; *State* v. *Cooke,* 24 Minn. 247 (31 Am. Rep. 344); *Rohrbacher* v. *City of Jackson,* 51 Miss. 735; *Schulherr* v. *Bordeaux,* 64 Miss. 59 (8 South. 201); *State ex rel.* v. *Wilcox,* 45 Mo. 458; *State* v. *Pond,* 93 Mo. 606 (6 S. W. 469); *State* v. *Noyes,* 30 N. H. 279; *State* v. *Morris Common Pleas,* 12 Am. Law Reg. (N. J.) 32; *Clarke* v. *City of Rochester,* 24 Barb. 446; s. c. 28 N. Y. 605; *State* v. *O'Neill,* 24 Wis. 149. There are cases, of which *Ex parte Wall,* 48 Cal. 279 (17 Am. Rep. 425), is perhaps the strongest, opposed to this view, it is true, but the very great weight, as the above numerous authorities will attest, is in support of it.

As the law stood at the time of the adoption of the act, no person was permitted to sell spirituous liquors in the State in less quantities than one gallon without having obtained a license from the county court of the proper county for the purpose, which provisions are without application to cities and incorporated towns. The mode prescribed for securing such license is for the applicant to procure the signatures of an actual majority of the whole number of legal voters in the precinct in which he is desirous of carrying on the business, and upon the production of such a petition and a compliance with other provisions the county court is authorized to grant the license. The cities and incorporated towns are governed in the issuance of licenses of the kind by their several charters and ordinances. All these provisions remain operative and are unaffected by the local option act, now under consideration, unless the people, by a majority vote in the precinct, ward or district involved, determine the contingency upon which the sale of intoxicating liquors shall be absolutely prohibited in such district: *Sandys* v. *Williams,* 46 Or. 327 (80 Pac. 642). If the vote be against prohibition, then the old law—both the general statute and the local acts and ordinances pertaining to incorporated towns and cities —remains operative; but, if for prohibition, then its operation is suspended within the district until the people again vote against prohibition, as is firmly established by the foregoing authorities. The present law, when enacted, was complete in itself, requiring nothing else to give it validity. It became effective as a law from the time of its enactment. All its provisions were then

susceptible of unrestricted operation. When the time came for 10 per cent of the voters of any authorized district to petition the county court to order an election, a way was provided and open, and so the very steps are prescribed in their regular order until an election determines the question of the expediency or inexpediency of enforcing prohibition within the district involved. The law provides for all these things, and this it did as it came from the people duly adopted. It is not the election that breathes into the act its validity or vitality. The act is complete, and an active, living force without it; but the election, as is designed, and which is constituted a part of the enginery of the law, does contribute to designate or determine the contingency upon which prohibition shall become operative or not, according to the popular will in the locality or localities where invoked. The new law is but supplementary to the old. It does not repeal or amend the old, or any portion of it, although it may suspend it for the time being, but not to eradicate it, or permanently to change its functions: *Schulherr* v. *Bordeaux,* 64 Miss. 59 (8 South. 201).

Suppose the two were adopted by the same statute, so that there was but one act instead of two or more, operating as an harmonious whole, would any one doubt its constitutional efficacy or validity? It then would be license if applied for in the way prescribed, or prohibition, as the popular will might determine as to the expediency or inexpediency in the premises. So it is now, and thus the matter is so simplified that none can fail to comprehend fully its operation. The wording of the act is not aptly devised, as it reads that "in every county, subdivision of a county, or precinct thereof, that shall return a majority vote for prohibition, * * the law shall take effect on the first day of January;" or "the first day of July," as the case may be (Laws 1905, pp. 41, 43, § 3) ; but the undoubted intendment is that prohibition shall become operative or not within the territory involved, dependent on the contingency to be determined by a vote of the people concerned, and is clearly distinguishable on principle from the act which was declared invalid in the early case of *Barto* v. *Himrod,* 8 N. Y. 483 (59 Am. Dec. 506), because of the provision that "it should or should not become a

law," dependent upon a majority vote of the people of the State. Such an act would have been clearly inimical to our constitution, as being made to take effect upon authority other than that prescribed in the instrument itself. But not so here. The act being general, it is also such by nature as that it may have local operation, and is not inhibited, as we have before observed, by any provision of Section 23 of Article IV of the Constitution of Oregon.

2. It does not, as is suggested, provide for a different rule for the punishment of crimes and misdemeanors, nor does it in any measure regulate the practice of the courts of justice. The crime or misdemeanor prescribed or created for a violation of the prohibition order is alike and uniform all over the State, and so it is with such as are prescribed for a violation of the old law if prohibition is not ordered. The suggestion is therefore untenable.

3. But it is urged that the proviso annexed to Section 21 of Article I, indicated a different intendment than such as we are disposed to attribute thereto. After reciting, "nor shall any law be passed, the taking effect of which," etc., the section continues: "Providing that laws locating the capital of the state, locating county seats, and submitting county and corporate acts and other local and special laws, may take effect or not, upon a vote of the electors interested." The argument of counsel is based upon the fact that an amendment was proposed in the convention by inserting after the word "acts" contained in this latter clause the words "prohibitory liquor laws," and was voted down, from which he concludes that it was the intendment that no prohibitory liquor law should be made to take effect upon a vote of the people. This is true in a sense. The mover of the amendment intended no doubt to create an exception to the preceding provision so as to permit prohibitory liquor laws to take effect or not upon a vote of the people—that is, a general law providing for that, and nothing else; but as the section now stands, considered in connection with Section 23 of Article IV, there is nothing to prevent the adoption of a local or special law inhibiting the sale of intoxicating liquors within any precinct, county, ward or city in the State; and the fact that the present

law may become operative locally, and not generally, is aptly in accord with the very spirit and letter of the constitution. We have come to this conclusion after a very careful consideration of the reading of the constitution, and are convinced that its soundness is established upon principle by the vast weight of the more recent authorities. *Lafayette, M. & B. R. Co.* v. *Geiger,* 34 Ind. 185, is especially instructive in this view.

With the wisdom, policy and expediency of the legislation the courts can have nothing to do. That is a matter purely and solely for another department of state—the lawmaking body, the legislative assembly—or, under the initiative and referendum amendment, for the people themselves to determine, and their determination in that regard is final and conclusive, save by an appeal to the same authority or department.

The judgment of the circuit court should be affirmed, and it is so ordered.                                                 AFFIRMED.