## WEIR v. CRAM.

1. **Constitutional law: ENACTMENT OF STATUTES.** The validity or taking effect of a law cannot be made to depend upon a vote of the people, and a section of the act providing for this is held unconstitutional. But if the act is complete without such invalid section it will be declared in force without regard thereto.

2. —— It is accordingly *held,* that chap. 144, acts of 1868, restraining stock from running at large, is in force, regardless of the section providing that the adoption of the act shall be dependent on a vote of the people of the different counties, and which is held to be unconstitutional.

*Appeal from Louis Circuit Court.*

MONDAY, DECEMBER 15.

ACTION commenced before a justice of the peace to recover money illegally collected by defendant for impounding plain-

tiff's cow, and for damages claimed to have been done by the cow for which she was impounded. There was a judgment for plaintiff before the justice, and a like judgment upon a verdict on an appeal in the circuit court. The defendant appeals to this court. The facts of the case appear in the opinion.

*Scott & Ercanbrack* and *A. J. Monroe* for the appellant.

*M. W. Herrick, J. A. Wing* and *Sheean & McCarn* for the appellee.

BECK, Ch. J.— The parties reside in the town of Monticello. In March, 1872, at six o'clock in the morning, defendant, finding plaintiff's cow in his lot, took her up and impounded her, directing the officer, who had charge of the pound, to retain her until a small sum was paid for the damage done by the animal. The plaintiff's son released the cow from the pound by paying the sum of seventy-five cents to the keeper, which was the amount charged under a town ordinance establishing the pound. To recover the money thus paid this suit is brought.

We are required to determine in the case before us, whether the cow was legally impounded. In reaching a conclusion upon this inquiry, we find it necessary to consider an ordinance of the town of Monticello and two or three statutes of the State.

The ordinance of the town provides, that all horses, cattle, etc., " shall be prohibited from running at large in any of the streets, alleys or public places, etc., from the first of April till the first of November of each year, from one hour after the setting of the sun until sunrise next morning; and from the first day of November till the first day of April of each year, from ten o'clock A. M. until four o'clock P. M." The ordinance provides, that the city marshal, or any citizen, may take up and impound any animal found running at large in violation of the ordinance, which, however, may be released upon paying costs and expenses of keeping it.

It will be observed that this ordinance is intended to prohibit animals from running at large within certain hours of the day or night, varying at different seasons of the year, and that plaintiff's cow was taken up and impounded at a time when the ordinance did not prohibit cattle running at large ; it has therefore nothing to do with the case.

Chapter 144, Acts 12th General Assembly, section 1, provides, " that any stock taken in the act of doing damage, between the hours of sunset and sunrise, may be distrained by the person or persons whose property is damaged, * * * whether the fences surrounding such property are lawful or otherwise." The other sections of the act direct the notice to be given the owner, and the proceedings to be had after the stock is distrained and impounded. These provisions need not be further noticed. The last section of the act is in these words : " At their regular session in June, in each year, a majority of the board of supervisors, in each organized county in this State, shall determine whether the adoption of the provision of this act shall be submitted to the legal voters of the county at the ensuing general election, and, if the supervisors so declare, there may be written or printed, in each ballot cast, either of the sentences following, to wit : " For the stock act ; " " Against the stock act." And if a majority of all the votes cast at such an election, in said county, be " for the stock act," then, and not otherwise, shall the provisions of this act be in full force in such county for one year, and so long thereafter as the legal voters shall determine. An act amendatory of this section provides that if the electors of the county vote for the stock act, it shall remain in force until the voters, in pursuance of the provisions of this act, shall determine otherwise. See Acts 13th Gen. Ass., chap. 24. There are subsequent enactments upon the same subject, viz., Chap. 26, Acts 13th General Assembly, and chap. 18, Acts 14th General Assembly, but it is unnecessary to consider them, as they are not relied upon in this case.

It will be observed that the enactment which we are called upon to consider and apply (chapter 144, Acts 12th Gen.

Ass.) is a law in its language and form in no sense different from the usual expression of legislative will by statutes. It is an explicit and positive provision that stock taken in the act of doing damage may be distrained, whether the fences surrounding the premises upon which they are found are lawful or otherwise. But the last section of the act provides that it shall not be in force in any county unless adopted by a vote of the people of such county. Here is the simple case of an enactment which is made to depend upon a popular vote, whether it shall or shall not have the force of law. A similar provision of a statute was passed upon by this court. The act for the suppression of intemperance (Acts 5th General Assembly, chapter 45), contains a provision identical in its character. The last section of that act provides that it shall not take effect unless it be adopted by an affirmative vote of the people of the whole State. This court held in *Santo* v. *The State*, 2 Iowa, 165, that the general assembly cannot submit to the people a proposition to be voted upon by them, whether an act shall become a law or not; that legislative power is vested in the general assembly, and not in the people; and that a law cannot depend for its validity upon a popular vote. The section providing for the submission of the law to the vote of the people was held to be unconstitutional, and other parts of the act were sustained and held to be valid without regard to a vote taken in pursuance of the last section; and it was determined that the law was complete without that section, and was in force without compliance with its provision. The sole difference between that act and the one under consideration is in the extent of the popular vote by which the statutes are to become operative. In the first instance, the vote of the people of the whole State adopted or rejected the law; in the last, it may be adopted or rejected in the separate counties by the vote of the electors thereof. The principles involved in each case are the same —the law depends in each instance upon a popular vote for validity. Following *Santo* v. *The State*, which has been too long acquiesced in and too often approved by this court to be now questioned, we hold that

the act of 1868, chapter 144, is of force without regard to the vote which it provides shall be taken to determine the question of its adoption by the people. It is the expression of the legislative will of the State, and does not depend, to give it force, upon the vote of the people or any part of the people. It is in force in all the counties of the State, as any other law enacted by the general assembly.

*Dalby* v. *Wolf & Palmer*, 14 Iowa, 128, is not in conflict with these views. That case involved the constitutionality of section 114 of the Code of 1851, and chapter 193 of the Laws of 1857. The first enactment authorized the county judge of each county to submit to a vote of the people of the county the question whether stock should be permitted to run at large, or at what time it should be permitted; the second applied the provisions of the first to swine and sheep and contained provisions for the enforcement of the regulation. Distinctions between these statutes and the one involved in this case are obvious. The former laws permitted the people of each county to adopt certain police regulations in regard to stock, and provides for the manner of their adoption and enforcement; the statute before us is a positive enactment by the legislature, made to depend for its validity upon the approval of the people by a vote. In the one case the people of the counties are permitted to make certain local police regulations, to have the force of law; in the other a law is enacted by the legislature which can have no force in any county until sanctioned by the vote of the people thereof.

We are not called upon to inquire whether the ordinance of the town of Monticello, above referred to, if in conflict therewith, supersedes the provisions of chapter 144 of the Acts of the 12th General Assembly. There is no conflict between them; they are upon different subjects and for different purposes. The object of the ordinance is to prohibit horses, cattle, etc., from running at large in the streets, alleys and public places of the town at specified times. The statute provides that stock doing damage at certain times may be distrained and held until satisfaction is made for such damage, whether the

fences surrounding the property upon which the trespass is done be lawful or otherwise. The point demands no further attention.

The court instructed the jury that chapter 144 of the Acts of the 12th General Assembly had "no application to the case," and the ordinance of the town of Monticello was "alone to be consulted to determine whether the stock was legally at large when taken up by defendant." This instruction is in conflict with the views we have above expressed and is therefore erroneous. The judgment of the circuit court must be therefore

Reversed.