OF

## THE STATE OF IOWA

AT

## DES MOINES, JANUARY TERM, A. D. 1895

AND IN THE FORTY-NINTH YEAR OF THE STATE.

---

STATE OF IOWA *ex rel.* DAVID F. WITTER, Appellant,
v. J. L. FORKNER AND W. W. MOORE.*

**Constitutional Law:** MULCT ACT. Chapter 62, Acts Twenty-fifth
General Assembly, provides for taxing the business of selling
liquor, and that it shall not be construed to legalize or license
sales of liquor. Also that the payment of the tax shall operate
as a bar to proceedings under the statute prohibiting liquor
selling in certain cities and towns, under the following conditions:
There must be filed with the county auditor a written consent of
a majority of residents who voted at the last election, a certified
copy of a resolution of the city council consenting to sales and a
written consent of all freeholders owning property within fifty

---

*The figures on the left of the syllabi refer to corresponding figures placed on the
margin of the case at the place where the point of the syllabus is decided.

feet of the premises in which liquor is to be sold. It also provides that if the act be violated or the council or a majority of resident electors revoke the consent, the bar shall cease to operate, and the seller is subject to the general prohibitory law. *Held*, the act is not unconstitutional for delegating the legislative power to the people of certain municipalities, to create or repeal a law. The law left the legislature complete. The people but determine whether a certain thing shall be done under it, and their act is but a condition precedent to the action of the council. It is an assent to or dissent from a legislative grant or deprivation affecting those electors alone. Prohibition remains the rule and license, if it be license, or a bar against punishment, the exception.

KINNE, J., dissents but reserves the right to pass on whether tax is enforceable, though other features of the act are invalid.

SAME: The act is not unconstitutional for interfering with the pardoning power of the governor. He can pardon *after* conviction, only. The statute is not local or special. It does not furnish a diversity of laws in different parts of the state, so as to be obnoxious to the constitution. Neither does it violate the constitutional requisition that all laws of a general nature shall have uniform operation.

SAME: TITLE. The act is entitled "an act to tax the traffic in intoxicating liquors and to regulate and control the same." *Held*, the title sufficiently expresses the purpose. While it may in effect be a license law, the title and the act call it by another name.

*Appeal from Polk District Court.*—HON. W. A. SPURRIER, Judge.

TUESDAY, APRIL 2, 1895.

Suit in equity to enjoin and abate an alleged liquor nuisance. The cause was tried to the court, and a decree entered dismissing plaintiff's petition, and it appeals.—*Affirmed.*

C. C. & C. L. *Nourse* and *Charles Mackenzie* for appellant.

*A. A. Haskins* for appellees.

Deemer, J.—The plaintiff's petition is in the usual form of such papers, alleging that defendant Moore is the owner, and defendant Forkner the occupant of a building in the city of Des Moines wherein intoxicating liquors were sold, and kept with intent to be sold, contrary to law, by the said Forkner, with the knowledge and consent of Moore. The petition further alleges: That chapter 62 of the Acts of the Twenty-fifth General Assembly, familiarly known as the "Mulct Law," is unconstitutional and void in this: that the act is in conflict with article 6, section 1, article 4, section 16, and article 9, part 2, section 4, of the constitution, and of an alleged amendment to the constitution adopted June 27, 1882; that the said enactment is invalid because the operation thereof in Polk county is made to depend upon the consent of a portion of the citizens of Polk county, bcause it confers upon a portion of the citizens of Polk county the right to make the laws of Iowa, because it attempts to confer on a portion of the citizens of Polk county the right to suspend legal penalties and bar proceedings under the law prohibiting the sale of intoxicating liquors, and because the whole subject of the act is not embraced in the title. The petition further charges that a certain statement of consent, in pretended compliance with section 17 of the act before referred to, has been filed in the office of the county auditor, but that such statement is not in compliance with the act, in that it is not in proper form, and is not verified as required by the statute, and that it is not signed by a majority of the citizens residing in the city of Des Moines who voted at the last preceding general election. It further alleges that defendant Forkner has paid the tax required by the act in question, and that he is not a registered pharmacist. The defendant Forkner admits in his answer that at the time of

the commencement of this suit he was conducting a
saloon at the place in question, but denies all other
statements and conclusions in the petition, and avers
that he is complying with all the provisions of the act of
the Twenty-fifth General Assembly in question. The case
upon the issues thus joined, was tried to the court on
the following stipulation of facts: "First. Defendants
admit the establishment of a place for the sale of intoxi-
cating liquors at the time and place charged in the first
paragraph of plaintiff's petition, and the sale of intoxi-
cating liquors, but deny that the same was illegal,
and claim the right to establish said place for the sale
of intoxicating liquors under the provisions of chapter
62 of the Acts of the Twenty-fifth General Assembly
of the state of Iowa. Second. The allegation of the
petition that the petition filed with the auditor of Polk
county was not signed by a majority of the legal voters
voting at the general election held previous thereto is
withdrawn, and no issue is made in relation thereto,
and defendants shall not be required, for the purposes
of this cause, to prove compliance with the said act of
the Twenty-fifth General Assembly, except to the form
and verification of the petition. It is further admitted
that the petition or statement of consent filed with the
county auditor consists of thirty-one parts, and that
the form of verification attached to all but four of said
parts is a typewritten, blank form filled out by the
notary public, and is in form as set out in defendant's
amendment to their answer, and that, without the
petitions with the typewritten forms of verification, a
majority of the resident voters' names would not be on
said petition."

It appears that in the court below some question
was made regarding the sufficiency of the statement of
consent filed with the county auditor, under the pro-
visions of the act in question. But the point is not

referred to in the printed briefs, and was merely sug-
gested by counsel for appellant in oral argument, had
before us, at the time of submission of the cause. We do
not understand counsel are insisting upon these alleged
defects, in this court, and will give them no further con-
sideration.

The questions presented by this appeal relate, then,
solely to the constitutionality of the act under which
defendant Forkner is conducting his business. We
may premise our discussion of the case by saying that
we undertake the solution of the problems presented
with full knowledge of the grave responsibility cast
upon us, and of the importance of the questions
involved, and shall endeavor to look at the matter in the
light of certain elementary principles, of which courts
must ever be mindful. Among these are that legis-
lative power is primarily plenary, and that state con-
stitutions are not grants of, but limitations upon, that
power, and he who would challenge a legislative enact-
ment must be able to specify the particular provision
of the constitution which deprives the legislature of
the power to pass the act; that it is the duty of the court
to reconcile statutes with the constitution, when it can
be done without doing violence to the language of
either; and that in all cases of doubt the doubt must be
resolved in favor of the constitutionality of the statute.
It is likewise true that the constitution is a shield which
the state, in its sovereign capacity, has provided for the
protection of public and private rights; that unre-
stricted legislation is inimical to both public and pri-
vate rights; and that it is our duty to see that no legis-
lation is enacted which improperly intrenches upon the
constitutional rights of the whole people, or of the indi-
vidual, or his property.

Before entering upon a discussion of the specific
objections made to the act, it is well to set out such of

its provisions as are material to a full understanding of the questions presented. The act is entitled "An act to tax the traffic in intoxicating liquors and to regulate and control the same." The first fifteen sections of the act relate to the assessment, levy, and collection of a tax of six hundred dollars against every person engaged in selling or keeping for sale, intoxicating liquors, and upon the real property and the owner thereof, within or whereon intoxicating liquors are sold, and kept with the intent to be sold, in this state. The said tax is to be paid into the county treasury, one-half to go to the general county fund, and the remainder to be paid to the municipality in which the business taxed is conducted. Section 16 is as follows: "Nothing in this act contained shall be in any way construed to mean that the business of the sale of intoxicating liquors is in any way legalized, nor is the same to be construed in any manner or form as a license, nor shall the assessment or payment of any tax for the sale of liquors as aforesaid, protect the wrong doer from any penalty now provided by law, except that on the conditions hereinafter provided certain penalties may be suspended." Section 17: "In any city of five thousand or more inhabitants, the tax hereinbefore specified may be paid quarterly in advance on the first days of January, April, July and October of each year, and after a written statement of consent signed by a majority of the voters residing in said city who voted at the last general election, shall have been filed with the county auditor, such payments shall upon the following conditions be a bar to proceedings under the statute prohibiting such business. 1st. The person appearing to pay the tax shall file with the county auditor a certified copy of a resolution regularly adopted by the city council, consenting to such sales and a written statement of consent from all the resident

free-holders owning property within fifty feet of the premises where such business is carried on." The other provisions and conditions relate to the filing of a bond, and to the manner in which the business shall be conducted, and need not be set out. Section 18: "In order that any city or town of less than five thousand inhabitants may come within the provisions of section 17 of this act, the following additional condition must be complied with: A written statement of consent shall be filed with the county auditor signed by sixty-five per cent. of all the legal voters who voted at the last preceding general election (as shown by the poll lists of said election), residing within such county and outside of the corporate limits of cities having a population of five thousand or over; but no such statement of consent shall be construed as a bar to proceedings against persons selling intoxicating liquors in incorporated towns situated in townships of which less than a majority of the voters of the township, including the incorporated town, have signed a statement of consent. Nor shall it be construed as a bar in any incorporated town in which a majority of the voters do not sign said statement of consent." Section 19: "Whenever any of the conditions of this act shall be violated, or whenever the city council or trustees of the incorporated town shall by a majority vote, direct it, or whenever there shall be filed with the county auditor, a verified petition signed by a majority of the voters of said city, town, or county, as the case may be, as shown by the last general election, requesting it, then and in such case, the bar to proceedings as provided in section 17 hereof, shall cease to operate as a bar, and persons engaged in the sale of intoxicating liquors as contemplated by this act, shall be liable to all the penalties provided for by chapter 6, title 11, of the Code and acts amendatory thereto. * * *" Section 24: "For the purpose of protecting

the property of the corporation and its inhabitants, and of preserving peace and good order therein, cities and incorporated towns shall have power to levy and collect additional taxes and to adopt from time to time, rules and ordinances for further regulating and controlling such traffic not in conflict with the provisions of this act." The act, being deemed by the legislature of immediate importance, went into effect from and after its publication, which occurred on the third and fourth days of April, 1894.

It is insisted that the act is unconstitutional because the title does not sufficiently express its purposes. Section 29 of article 3 of the constitution provides that "every act shall embrace but one subject and matters properly connected therewith; which subject shall be embraced within the title." It is conceded that the act embraces but one subject and matters germane thereto; but it is contended that the subject is not expressed in the title, for the reason that the law is simply a license law, and that that purpose should have been expressed in the title. It seems to us, there is no merit in this contention. The title says it is an act to tax traffic in intoxicating liquors, and to regulate and control the same. Does it do more than this, and is there anything in it not allied to the subject expressed in the title? We think not. The power to regulate is to lay down the rule by which a thing shall be done; to prescribe a rule by which a business or trade shall be conducted. And the power to control is to exercise a restraining or governing influence over; to check, to restrain or regulate. We can hardly conceive how more apt words could have been used to express the purpose of the act. It is not contemplated that anything more than general terms shall be used in the title, to express the object sought to be obtained. It may be true, as claimed by counsel,

that the act is, in effect, a license. But the title and the act itself call it by another name, and when the two are construed together there is no uncertainty in the title.

II.   It is next insisted that the purpose and legal effect of this act is to give to the people of certain cities the power to repeal or abrogate the provisions of the prohibitory law, and that this can only be done by an act of the general assembly of the state, expressed in a constitutional manner.   In other words, it is insisted that the question as to whether the prohibitory law shall be in force or not is left to a vote of the people, and that under our constitution such power is intrusted solely to representatives elected by the people, who can not refer the question back to their constituents for determination. This contention is, it seems to us, based on a misapprehension of the legislation in this state relating to the traffic of intoxicating liquors.   It must be borne in mind that the act in  question is a general law, applicable alike to all localities of the state coming within its terms.   It does not depend upon a vote of the people to give it vitality.   It went into effect upon its publication, and was a complete and valid enactment at that time.   If it repeals the general prohibitory laws in any particular, it does so only by implication, and the repeal is not made to depend upon the vote of the people.   The act itself works the repeal of the old laws, if there is any inconsistency between them.   It is no doubt true that the general assembly cannot legally submit to the people the proposition whether an act shall become a law or not, for the people have no power, under our form of government, in their primary or individual capacity, to make laws.   This they must do by their representatives.   But the constitutional objection to the law is met, if the act, when it came from the legislature, received the governor's approval, and

was properly published, was, of itself, a complete and perfect enactment. This distinction is made clear by Mr. Justice Wright in the case of *Dalby v. Wolf*, 14 Iowa, 228, wherein he says, in speaking of a like objection to what is known as the "Herd Law": "Neither of these positions is tenable. They utterly mistake the intention of the constitutional provision quoted, and misapprehend the scope and spirit of the decisions, in this and other states, which hold that the legislature cannot refer to the people the question whether a particular act shall become a law. In all the cases referred to, it will be found that * * * the question submitted was whether or not a proposed law should become operative. Thus, in the first case cited, it was provided by the statute that 'the electors shall determine, by ballot, at the annual election to be held in November next, whether this act shall, or not, become a law.' If a majority voted against it, then it was to be null and void; if for it, then it was to take effect on the day named. And such legislation was expressly condemned by this court in *Santo v. State*, 2 Iowa, 165, which was recognized and followed in *Geebrick v. State*, 5 Iowa, 491. The law in question, however, is not obnoxious to this objection. The popular will is expressed under and by virtue of a law that is in force and effect, and the people neither make or repeal it. They only determine whether a certain thing shall be done under the law, and not whether said law shall take effect. The law had full and absolute vitality when it passed from the hands of the legislature; and the people, under the 'rule of action' therein given for their government, proceeded to act. The same rule—the same law—was given to all the people of the state, to all parts of it; the same method for taking the vote was presented for all counties; the same penalties were attached. As a result a different regulation, of a police

nature, might exist in one county from what existed in another; just as, * * * one county might determine, by a popular vote, that a higher rate of tax should be levied than that provided by the general law." In the case of *Weir v. Cram*, 37 Iowa, 653, the principle announced in the foregoing opinion was reaffirmed, and the distinction we have drawn observed. In the latter case it is said: "In one case the people of the counties are permitted to make certain local police regulations, to have the force of law; in the other, a law is enacted by the legislature, which can have no force in any county until sanctioned by the vote of the people thereof." The act in question is complete in itself, requiring nothing further to give it validity, and does not depend upon the popular vote of the people, or, if it does, depends upon this vote simply to determine the limits of its operation. The rule we have established, first announced in this state more than thirty years ago, is supported by the overwhelming weight of authority. See Black Intox. Liq. section 45, and cases cited; *State v. Parker*, 26 Vt. 357; *Commonwealth v. Bennett*, 108 Mass. 27; *Commonwealth v. Dean*, 110 Mass. 357; *Gloversville v. Howell*, 70 N. Y. 287; *State v. Circuit Court of Gloucester Co.*, 15 Atl. Rep. 272; *Savage v. Commonwealth*, 5 S. E. Rep. 565; *Schulherr v. Bordeaux* (Miss.) 8 So. Rep. 201; *Gordon v. State* (Ohio) 23 N. E. Rep. 63; *State v. Pond* (Mo. Sup.) 6 S. W. Rep. 469; *Feek v. Township Board* (Mich.) 47 N. W. Rep. 37; *Territory v. O'Connor* (Dak.) 41 N. W. Rep. 746; Cooley, Const. Lim. (6th Ed.) pp. 137-145, and cases cited. Some few cases are to be found announcing a contrary doctrine. See *Parker v. Commonwealth*, 6 Pa. St. 507; *Maize v. State*, 4 Ind. 342; and *Ex parte Wall*, 48 Cal. 279. The case in Pennsylvania, however, was afterwards overruled in *Locke's Appeal*, 72 Pa. St. 491. And the case in Indiana is practically overruled in *Groesch v. State*, 42 Ind.

547. The California case has also been distinguished, and is weakened, as an authority, in the case of *People v. McFadden* (Cal.) 22 Pac. Rep. 851. The case of *Santo v. State*, 2 Iowa, 203, is not in conflict with the views we have expressed. Nor is the case of *Geebrick v. State*, 5 Iowa, 493, as explained in *Dalby v. Wolf*, to be regarded as establishing a contrary doctrine. *State v. Beneke*, 9 Iowa, 203, simply follows the rule announced in *Santo v. State*. The case of *State v. Weir*, 33 Iowa, 134, recognizes the doctrine announced in the *Geebrick Case*, that "a law can no more be repealed than it can be made by a vote of the people."

In the case of *City of Des Moines v. Hillis*,55 Iowa, 643, this court, in construing chapter 56, Laws 1878, authorizing cities to provide by ordinance for payment of salaries to their officers, in lieu of fees theretofore retained by such officers under prior statutes, held the act was not void as a delegation of the power of legislation to the cities, Justice Beck using this language: "Counsel insist that the act in question is void for the reason that the provisions as to the salary of the officers can only take effect upon the vote of the city council,—a law of the state thus made dependent upon the action of a municipality, which, it is insisted, is in conflict with the constitution. The statute confers authority, to be exercised at their discretion, upon city councils. They may execute the power conferred, or withhold its execution. That is all there is of it. The city has authority from the state to pass the ordinance. Surely it cannot, with fairness, be said that the operation of, and validity of, the statute depend upon the action of the city." This, we believe, is the latest expression of this court on the subject now under consideration, and it is directly in line with the views heretofore expressed in this opinion.

That it is competent for the legislature to empower municipalities to make ordinances and adopt regulations for controlling, licensing or prohibiting the traffic in intoxicating liquors, is plain, and is not questioned in this case. It is entirely in accord with the principle of local self-government that the power to enact police regulations on matters so closely connected with the good order and prosperity of a city should be lodged with those best qualified to judge of measures adapted to meet the emergencies of these particular situations. And it is competent for the legislature, in its wisdom, to invest them with the authority necessary to the administration of the special purposes of their creation. As said by Judge Cooley in his work on Constitutional Limitations (6th Ed.) pp. 144, 145: "Municipal charters refer most questions of local government, including police regulations, to the local authorities, on the supposition that they are better able to decide for themselves upon the needs as well as the sentiments of their constituents than the legislature can possibly be and are therefore more competent to judge what local regulations are important, and also how far the local sentiment will assist in their enforcement. The same reason would apply in favor of permitting the people of the locality to accept or reject for themselves a particular police regulation, since this is only allowing less extensive powers of local government than a municipal charter would confer; and the fact that the rule of law on that subject might be different in different localities, according as the people accepted or rejected the regulation, would not seem to affect the principle, when the same result is brought about by the different regulations which municipal corporations establish for themselves in the exercise of an undisputed authority." See, also, *State v. Noyes*, 10 Fost. (N. H.) 279; Beach, Pub. Corp. section 72; *State v. Wilcox*, 42 Conn. 364;

Tiedman Lim. p. 638; Black Intox. Liq. section 217; Dillon Mun. Corp. sections 9, 44, and authorities cited. The policy of creating local public and municipal corporations for the management of local concerns runs back to the earliest period of our colonial history. It is exhibited in all our legislation, and expressly or impliedly guarantied by our state constitutions. *Commonwealth v. Roxbury,* 9 Gray, 503. See, also, the learned opinion of Judge Cooley in *People v. Hurlbut,* 24 Mich. 44, wherein he treats of the history of towns and townships, their place in our system of government, and their rights of local self-government. See, also, *State v. Pond, supra; Commonwealth v. Bennett,* 108 Mass. 27; *Savage v. Commonwealth* (Va.) 5 S. E. Rep. 565; and the learned decision of the subject in *State v. Circuit Court of Gloucester Co.* (N. J. Err. & App.) 15 Atl. Rep. 272; *Clark v. City of Rochester,* 28 N. Y. 605. In the case of *Commonwealth v. Bennett, supra,* it is said: "It is equally within the power of the legislature to authorize a town, by vote of inhabitants, or city, by vote of the city council, to determine whether the sale of a particular kind of liquors within its limits shall be permitted or prohibited. This subject, although not embraced within the ordinary power to make by-laws and ordinances, falls within the class of police regulations which may be intrusted by the legislature to municipal authority." It is useless to cite additional authorities, many of which are in the books, upon these propositions, for the doctrine is already the established rule in this state. In the case of *Morford v. Unger,* 8 Iowa, 82, the principle is recognized, and applied to a statute which provided that it should not go into effect until accepted by the city council of the city of Muscatine. And in the case of *State v. King,* 37 Iowa, 462, it is said: "Counsel maintain that the law conferring the power to pass the ordinance in question is, under the decision

of this court, unconstitutional, on the ground that it is
a delegation of legislative authority to cities and towns,
enabling them to make law.   And this it certainly is.
But cities and towns do have legislative authority, and
it is delegated to them by the state; yet ordinances
made in pursuance thereof, if within the authority con-
ferred, and not in conflict with the constitution, have
always been sustained.   It is the doctrine of this state
that the general assembly cannot delegate to the people
the right to make or repeal a law; that statutes or parts
of statutes which are made to depend for their validity
upon a popular vote are unconstitutional.   But it never
has been held that the state cannot delegate legis-
lative power to municipal corporations, within proper
bounds."

Turning now to the act under consideration,
we find that the bar to proceedings under the prohibitory
liquor laws cannot become effective unless the saloon
is located in an incorporated town or city, and not then
unless the person who proposes to engage in the business
has authority from the city council.   What matters it
that the saloon keeper must also have the consent of at
least a majority of the electors who voted at the last
preceding general election?   Very many of the things
authorized by the law to be done by a city council can
only be done after petitions are presented, signed by a
certain number of the inhabitants or property holders,
and such provisions have never been questioned.
Moreover, in some matters relating to local self-govern-
ment, the council cannot act until a vote of the
people of the municipality is had, authorizing them
to do so.   Such laws have never been doubted.   It is
unnecessary to cite these various enactments.   They
are familiar, not only to the profession, but to nearly
every layman as well.

It is said by counsel for appellant that, notwithstanding the statement in the law itself that the business of selling intoxicating liquors is not legalized or licensed by the act in question, yet such is its effect. For the sake of argument, we grant the position, and yet it does not alter the principles of law applicable thereto, but rather strengthens them. Prohibition remains the general rule, and license, or a bar to the proceedings against violation of it, the exception. To obtain this license or bar to proceedings, it is necessary that the city council, in the exercise of the power conferred upon it for local regulation, give permission to the conduct of the business, and this it can do only upon certain conditions, which are set forth in the act. The city council also has power to levy and collect additional taxes, and to adopt further rules and ordinances for regulating and controlling the traffic; clearly indicating that the whole matter is one of police regulation, delegated to the city council, which had the power to, but is not required to, do those things which remove the bar.

The objection that the consent of a majority of the electors is needed before the consent of the city council can be given, and that for that reason the whole matter is submitted to a vote of the people, who are to determine whether a particular law is to be in force or not, is fully met in the learned opinion of Judge Van. Syckel in the case of *State v. Circuit Court of Gloucester Co., supra.* As we have already said, the consent of a majority of the electors, if obtained, does not, of itself, create the bar. This is obtained simply as a condition precedent to the city council's acting in the matter. When this is obtained, the council may then grant its permission or not, as it sees fit. The whole matter is left with it to determine,—not only whether the bar shall be created or not, but also the

conditions upon which it may be created. *Ex parte Christiansen* (Cal.) 24 Pac. Rep. 747; *State v. Court of Common Pleas,* 36 N. J. Law, 72; *Groesch v. State, supra.* It should be remembered, too, in the discussion of this matter, that the questions of whether the mulct law shall be in force or not, and as to whether it shall be operative in a particular locality, are not submitted to the whole people, but only to those who, in the judgment of the legislature, were to be affected by the establishment of the saloon. The vote of the whole people of the state upon the expediency of a general statute may be, and probably is, essentially an act of legislation. But the vote of a local constituency is an assent to or a dissent from an act of grant or deprivation done by the legislature, but affecting themselves. This distinction is well illustrated in the case of *Bank v. Brown,* 26 N. Y. 467.

The statute in question is not a local or special law. Nor does it furnish a diversity of laws in different parts of the state, so as to be obnoxious to the constitution. Nor is it a violation of the constitutional requirement that all laws of a general nature shall have a uniform operation throughout the state. *State v. Pond* and *Gordon v. State, supra; State v. Schroeder,* 51 Iowa, 197; *Howell v. State,* 71 Ga. 224; *Creekmore v. Com.* (Ky.) 12 S. W. Rep. 628; *Bronson v. Oberlin,* 41 Ohio St. 476.

III. Lastly, it is insisted that the act is unconstitutional because it grants to the people of a particular locality, or to the city council of cities or incorporated towns, the pardoning power, and that this power is lodged, by our fundamental law, in the governor. The constitutional provision with reference to this subject is as follows: "Art. 4, section 16. The governor shall have power to grant reprieves, commutations and pardons *after conviction,* for all offenses

except treason and cases of impeachment. * * *
He shall have power to remit fines and forfeitures.
* * * And shall report to the general assembly
* * * each case of reprieve, commutation or pardon
granted, and the reasons therefor; and also all persons
in whose favor remissions of fines and forfeitures shall
have been made, and the several amounts remittted." It
is clear the act we are examining does not remit any fine
or forfeiture, for none is imposed in the locality where
the act is in operation. *Harbin v. State,* 78 Iowa, 265.
It simply bars proceedings which might result in a
fine or forfeiture, if allowed to continue. There is no
constitutional inhibition against this, unless it amounts
to a pardon. No doubt, a pardon, in its strict sense,
contemplates a remission of guilt, both before and after
a conviction. *Ex parte Wells,* 18 How. 309; *Ex parte
Garland,* 4 Wall. 333; 4 Blackstone, Comm. 316. See,
also, a full discussion of the question, found in the
opinion of Justice Gray in the case of *Commonwealth v.
Lockwood,* 109 Mass. 323. But our constitution, in
terms, says the governor's right to pardon exists
only *after conviction.* It is clear to our minds that
this objection to the act now under consideration
is not tenable. We have a number of statutes on
our books, somewhat similar in character, which
have passed unchallenged for years, thus indicat-
ing that the bench and the profession generally have
never regarded a bar to proceedings created by statute
as an exercise of the pardoning power. For instance,
it is provided in section 1548 of the Code that, when
a person is tried and convicted for intoxication, he may
be discharged, and his fine remitted, upon giving
information, under oath, stating when and where, and
from whom, he purchased the liquor which produced
the intoxication, upon certain conditions not necessary
to be stated here. Again, it is provided in section 3868

of the Code that if, before judgment upon an indictment for seduction, the defendant marry the woman, it is a bar to any further proceedings in the offense. Again, it is allowable, under sections 4708 and 4709 of the Code, for the defendant and the person injured to compromise certain offenses, with leave of the court; and, when so compromised, proceedings are stayed, and a bar is created to another prosecution for the same offense. The power to pardon must not be confounded with the power of dispensation or suspension. The former is undoubtedly a prerogative of the executive, while the latter must be exercised by the legislative department of the government. The student of history will remember that one of the main causes for the English revolution in 1688 was the unlawful and corrupt assumption by James II. of the power of dispensation or suspension of the test-oath statutes. In order that his course might receive judicial sanction, he corrupted his courts by the removal of those judges whom he could not control, and appointed in their places hirelings who would do his bidding. The people rebelled, and one of the first statutes passed after the revolution (1 W. & M. St. II. c. 2) declared that the pretended power of suspending or dispensing with laws, or the execution of laws, by legal authority, without the consent of parliament, is illegal. See 1 Blackstone Comm., p. 142. Blackstone declares that "not only the substantial part of judicial decisions of the law, but also the formal part, or method of procedure, cannot be altered but by parliament; for, if once these outworks were demolished, there would be an inlet to all manner of innovations in the body of the law itself." In view of these historical facts, it certainly cannot be contended that the executive has power to bar proceedings under, or suspend the operation of, any of our laws. Should he attempt to exercise such powers, it

would as certainly lose him his title as it did James II. his crown.

We have, as best we may, discussed and disposed of every objection urged to the constitutionality of the act in question; and, while we are aware that there are some respectable authorities holding to a different rule from that announced in this opinion, yet we think that they are founded on a mistaken assumption as to the law, and fail to recognize proper distinctions between the delegation of power to make a law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. We are thoroughly convinced that all questions raised on this appeal have heretofore been determined by this court, or that, at least, principles have been announced which, when applied to the facts of this case, determine against all of the objections urged against the validity of the act. It is manifest, too, from the citations we have made, that the great weight of authority in this country supports our views. We have no doubt about the constitutionality of the law. But, had we any question about it, it would be our duty to resolve our doubts in favor of sustaining the act. With the policy or expediency of this enactment, we have nothing to do. This is solely a question for the legislature, which has seen fit to place it upon the statute books; and to it must we look for its repeal, if it proves inexpedient. We grant that statements have been made in some of the earlier opinions of this court somewhat at variance with the views herein expressed. But we think a careful examination of these cases will disclose that there is no real conflict. From what has been said, it follows that the judgment and decree of the district court is. *affirmed.*

Kinne, J. (dissenting).—I.   I am unable to concur in the opinion of the majority, in so far as it holds that the act in question is not a delegation of powers of the legislature to the people, to repeal and enact laws, and therefore not unconstitutional.   I am deeply impressed with the duty devolving upon courts, in passing upon the validity of statutes, to uphold them, if possible.   I agree that the statutes should not be set aside save when they are palpably in violation of either the letter of the constitution, or of those underlying fundamental principles upon which our fabric of government rests.   In determining the validity of a statute, we cannot consider or give weight to our judgment as to the necessity for, or the propriety or expediency of, the legislation in question.   It is not for the court to determine what the law should be, and thus, under the guise of judicial judgment, create law, but its province is to declare what is the law.   It is unfortunate that the legislation touching a subject which so engrosses the attention of the people, and upon which the convictions of men are so decided and antagonistic, should afford any just reason for question-ing its constitutionality.   When it is so clearly apparent that the real purpose which the legislators had in mind, in the attempted enactment of this statute, could have been so easily and certainly accomplished by the passage of a proper law, which would have had the force and effect of a completed act of legislation when it left their hands and had been approved by the governor, it seems incomprehensible that they should have abdi-cated their powers as a lawmaking body, and deliber-ately violated a solemn duty devolved upon them by the constitution of the state.   The importance of the question, as well as the wish I have had to reach a conclusion in harmony with my brethren,—a result always desirable, and especially so in a case like this,

which so deeply affects the well-being of all the people
of the state,—has led me to give much time and consid-
ation to the question presented. After a careful consid-
eration of the views of the majority and a thorough
investigation of the authorities bearing upon the
question, I am impressed with the conviction that some
of the provisions of the act are clearly in violation of
the constitution of the state, and are a direct assault
upon the very fundamental principles upon which our
form of government is based. I cannot, therefore, either
assent to the views of the majority, nor can I content
myself without, as briefly as I may, expressing my views
touching this question. I shall not set forth in detail
the act itself. I shall refer to so much of it as is set
out in the opinion of the majority, and hereafter state
such other of its provisions as may be necessary to a full
understanding of my views. The act, as will be seen,
undertakes to tax the business of selling intoxicating
liquors, through the person of the seller, the owner of
the property where the business is carried on, and also
the property in which the business is conducted. It then
provides, in section 16, that "nothing in this act
contained, *shall be in any way construed to mean that
the business of the sale of intoxicating liquors is in any
way legalized, nor is the same to be construed in any
manner or form as a license,* nor shall the assessment
or payment or any tax for the sale of liquors, as afore-
said, protect the wrong doer from any penalty now pro-
vided by law, except that on conditions hereinafter pro-
vided certain penalties may be suspended." After thus
announcing that they were not legalizing the business,
and not conferring authority to license the traffic,
they proceed by sections 17 and 18 of the act, to make
provision for legalizing the business and exacting
a license, at the option of a certain number of legal
voters, and of the city council in cities, and boards

of trustees in incorporated towns, upon the performance of certain acts by the one desiring to sell, and of certain other citizens. The act also provides for the suspension of penalties of the existing prohibitory laws, and bars all proceedings under such laws, upon the petition and action heretofore referred to being procured and had. Section 19 of the act provides that the bar to proceedings under the existing law, created by the performance of the acts before mentioned, shall cease to operate in favor of the party whenever he violates the conditions, at the option of the city council, or trustees of a town, or whenever it is so petitioned by a majority of the citizens. In all such cases the liquor seller becomes liable to all of the penalties of the prohibitory law. *But in no case, according to the wording of the act, are proceedings under the prohibitory law suspended or barred, or penalties suspended, unless the requisite number of legal voters petition therefor.* The ingenuity of the law-making power has often been severely taxed in the preparation and promulgation of prohibitory licenses, tax, and local-option liquor laws; but it is safe to say that the act in controversy is, in many of its features, unlike anything to be found in any statute relating to intoxicating liquors.

II.   It is a rule everywhere asserted, and nowhere denied, that the power of the legislature to enact and repeal laws cannot be delegated to the people; that the people, in their primary capacity, have no power to either enact or repeal a law. *State v. Wilcox,* 42 Conn. 369; *Ex parte Wall,* 48 Cal. 279; *Locke's Appeal,* 72 Pa. St. 491; *Fell v. State,* 42 Md. 90; *Parker v. Commonwealth,* 6 Pa. St. 518; *Maize v. State,* 4 Ind. 342; *People v. Collins,* 3 Mich. 343; *State v. Copeland,* 3 R. I. 35; *Rice v. Foster,* 4 Har. (Del.) 479; *State v. Young,* 29 Minn. 474, 9 N. W. Rep. 737; *State v. Swisher,* 17 Tex. 441; *People*

*v. Stout*, 23 Barb. 358; *State v. Bond*, 93 Mo. 606, 6 S. W. Rep. 469; *Feek v. Township Board* (Mich.) 47 N. W. Rep. 40; *Santo v. State*, 2 Iowa, 202; *State v. Geebrick*, 5 Iowa, 491; *State v. Beneke*, 9 Iowa, 203; *State v. Weir* 33 Iowa, 134; *State v. King*, 37 Iowa, 467. This doctrine is fully recognized in the majority opinion. The contention arises over the question as to what, in a given case, constitutes such a prohibited delegation of power. The argument of the majority is based upon the claim that the act being complete in form, and so framed that its provisions may be taken advantage of by the people of any portion of the state, it is not dependent upon the action of the people for its validity, and that, if it operate to repeal the prohibitory laws, such repeal is not dependent upon the action of the people, but is accomplished by the law itself. In my judgment, not one of these claims is well founded. It must be understood that I am not now dealing with the taxing features of this so-called law, but with that part of it which undertakes to suspend—or, more properly speaking, repeal—the provisions of the prohibitory liquor laws upon petition of a certain number of citizens and the action of the council or board of trustees, as the case may be, which may be had only after such a petition has been filed, and after the performance of certain other acts provided for, whereby the sale of liquor is licensed and attempted to be legalized, and the further provisions of which act undertake, upon the said petition of citizens and other acts done thereunder, to revive or reinstate such prohibitory laws in all respects as if the same had never been suspended or repealed.

I maintain that, in so far as the act in question relates to those matters, it is of no more efficiency than a blank sheet of paper. It is not a legislative act. It is, at most, a mere proposition, submitted by the legislature to the people, of which they may avail them-

selves at their will, by the petition, thereby giving force and vitality to the act. True, in form it is an act of the legislature; that is, it bears the signature and approval of the proper officers,—and in that sense only can it be said to be a completed act. The same thing may be said of any other act which may nevertheless be in fact in plain violation of the constitutional provisions. In arriving at a determination of this question, we may be aided by a consideration of what constitute some of the essentials of a law. Law is a rule of action prescribed by the supreme power of a state, commanding what is right and prohibiting what is wrong. Hence, the act, to be valid, must be more than a mere proposition submitted to the people. It must command something. As is said in case of *State v. Geebrick*, 5 Iowa, 497: "The legislative power must command. It must not leave to the people the choice to obey or not to obey its requirements. It is not a law enacted according to the requirements of the constitution, if there is left to the action and choice of the people upon whom it is to operate the determination of a question which may result in a want of uniformity in the operation of a law of a general nature." True it is, by this act the power is granted to the citizens to petition, but it is a mere privilege or power, not a command. Hence, in this respect, the act lacks this essential element of a law. The grant of power is to the people, by petition, in conjunction with the act of the council or board of trustees, to put in force certain proposed legislation, and repeal existing statutes, in cities and towns, when they may elect so to do; and the election of the people, thus expressed, is, by the act, made an absolute prerequisite to the change in the law. The suspension or repeal of the existing prohibitory liquor laws, and the putting in force, in their stead, of a license law, and the protection of the liquor seller from the provisions and penalties of

such prohibitory laws, are all based solely upon, and
initiated by, the petition of the requisite number of
citizens in a certain community. They, and they alone,
by the petition, make it possible for the city council or
board of trustees to create a rule and penalty. In the
absence of the petition, there is no rule and no penalty
as the provisions of the act in that respect command
nothing, and do not become vitalized into life until the
requisite petition is presented, and certain other steps
are taken thereunder. No rule of law and no penalty
is created, then, until the people have petitioned, and
not then unless the council or board of trustees act in
furtherance of the wishes of the petitioners. What,
then, gives effect and vitality to these provisions of the
act? Manifestly, not the law itself, but the petition
and the action had thereunder. The so-called legisla-
tive act is, in these respects, lifeless, ineffective, with-
out force in and of itself, but life is breathed into the act
by the petition and the acts thereunder. The old law
is suspended or repealed, not by the act of the legisla-
ture, for we must remember that that act commands
nothing, requires no act of the people to be done, but
the suspension and repeal of existing laws is accom-
plished as I have stated. Not only is the old law thus
repealed, and the new order of things established; but
the law thus enacted by the people themselves may be
set aside without the intervention of the legislature,
and the prohibitory law re-established by petition of
the people, or by act of the council. So the prohibitory
law may be repealed in one locality, and remain undis-
turbed in another locality, and yet, in the face of all
these facts, it is contended that the law, as an act of
legislation, is effective in and of itself. If the petition
and acts had thereunder do not operate to suspend or
repeal the prohibitory law; if such action does not give
life and efficacy to an enactment which, in the absence

of these acts, is a statute in form only, having no force, —why is it that the act in question may be in force in one locality and lifeless in another?   Clearly, then, it is the petition and the acts thereunder which repeal the prohibitory law.   The legislature has not commanded the repeal of the law, but has said to the people of the several communities, By your petition and certain other action shall the law be repealed.   The law-making power remits to the people the task of repealing the law, and thereby invests them with its own legislative authority,—delegates it to them, abrogates its prerogative, and undertakes to confer it on a body not authorized by the constitution to make laws.   It is contended that the act itself works the repeal of the old law.   How can that be when, as we have seen, the act commands nothing,—not even a vote.   It is, in that respect, not mandatory, but a grant to petition for a law.   The theory may be plausible, but, in my judgment, is not tenable.   As is well said in the dissenting opinion of Reed, J., in *State v. Circuit Court of Gloucester Co.*, 50 N. J. Law, 585, 15 Atl. Rep. 287:  "If this statute, as I have already remarked, delegated to the people the power to do that which is legislative, then, it does not matter how perfect its form, it is void.   *   *   *   The assumption that the vote is the result of the law, and not the law of the vote, is only a half truth.   The vote is the result of the law and the law is the result of the vote.   Unless a scheme framed by the legislature had provided for a vote, of course, there would be no vote.   So the votes grow out of the statute.   But because the vote is in this sense, a part of the scheme of legislation, it is no less true that all the people, as a legislative body of last resort, is intrusted with the determination of the final question,—law or no law. It adds to those bodies to which the constitution confides the approval of law another body.   It makes the

validity of the framework which the legislature has drafted to depend upon another mind than the legislature itself. Both the legislature and the people concur in the work, but because each contributed to the perfection of the statute makes none the less the act of each, legislation."

The argument of the majority opinion amounts to this: That, while the legislature cannot pass a law to take effect upon its approval by a vote of the people, it may pass a law whereby the people of the various localities of the state may, by vote or petition, avail themselves of its provisions. To my mind, the latter scheme is no less an invasion of the provisions of the constitution than is the former, for, it must be admitted, in the latter case the act has no force and effect until its proposed benefits are accepted in the manner provided herein. As is said by Morse, J., in *Feek v. Township Board* (Mich.), 47 N. W. Rep. 42: "I have no appreciation of such an argument. It amounts to this, and this only: The legislature says to the people, 'Do you want this law or not? If you want it, you can have it. If you don't want it, you can't have it. Now, meet at your polling places, and vote upon it, and make your choice.' If, in such a case, the people do not, by an election, make the act a law, or reject it, then I am obtuse. This would be a convenient thing for a legislature wishing to shirk their responsibility,—to submit all their laws to the vote of the people, for if they can submit one they can all; but it is not the way provided by our constitution for the enactment of laws." Acts conferring powers upon municipalities are upheld because of the fact that they are complete and valid laws when they come from the hands of the legislature, and the happening of the contingency or event which furnishes the occasion for the exercise of the power gives no additional efficacy to the law itself. Touching

this matter, I quote approvingly the language of Wagner, J., in *Lammert v. Lidwell*, 62 Mo. 192: "It derives its whole vigor and vitality from the exercise of the legislative will, and not from the vote of the people. * * * It must operate by virtue of the legislative authority, and not depend upon popular action or the people's suffrages for its vitality." And Sherwood, J., in *State v. Pond*, 93 Mo. 606, 6 S. W. Rep. 489, says: "In certain classes of cases * * * relating to mere local or municipal objects, it is perfectly competent for the legislature, by a law complete in itself,—one announcing penalties for its violation,—to submit to the people of certain localities to determine by their votes whether some small minor regulation, incident to, but not necessary to, the *existence of the law itself*, shall be adopted. But if the law is not complete, if it has no *self-enforcing penalty*, when it leaves the hands of the legislature; if it is a mere proposal to the people of certain localities to determine whether *certain printed matter* which appears on the statute books shall become a law or no,—then such a proposal is a clear delegation of legislative power, and for that reason unconstitutional." It is said that the legislature may pass a law to take effect upon contingency. That is true. In that respect I approve of the rule laid down by Reed, J., in *State v. Circuit Court of Gloucester Co.*, *supra*, where he says: "The difference between the statutes based upon a valid contingency and those based upon a contingency void as a delegation of legislative power, may, I think, be clearly stated. The first is a statute ordaining a fixed rule of civil conduct, applying to a certain prescribed condition of fact, which may arise *in futuro*. The last is a statute which leaves to the people the power to say whether, when such a rule has been enacted, it shall ever become operative. One leaves the rule a law ready to operate upon

the subject-matter whenever it arises. The other leaves it to another to say whether the rule shall ever become a ·law." It would be an interesting study to review and comment upon very many cases touching what is a delegation of legislative power, but the length of this opinion forbids. I can only say that the rule I contend for finds abundant support in the following cases (I do not claim that they are all exactly in point, under a state of facts such as we have in the case at bar, but in principle they recognize the doctrine upon which this dissent is based): *Parker v. Com.,* 6 Pa. St. 507; *Maize v. State,* 4 Ind. 342; *Ex parte Wall,* 48 Cal. 279; *People v. Collins,* 3 Mich. 343; *Rice v. Foster,* 4 Har. (Del.), 479; *Barto v. Himrod,* 8 N. Y. 483; *State v. Swisher,* 17 Tex. 441; *People v. Stout,* 23 Barb. 356; *State v. Young,* 29 Minn. 474, 9 N. W. Rep. 737; *State v. Copeland,* 3 R. I. 35; *Fell v. State,* 42 Md. 90; *Locke's Appeal,* 72 Pa. St. 491 (dissenting opinions of Reed and Sharswood, JJ.); *Santo v. State,* 2 Iowa, 203; *State v. Beneke,* 9 Iowa, 202; *Geebrick v. State,* 5 Iowa, 493; *State v. Weir,* 33 Iowa, 134; and many other cases. It is said in the majority opinion that the first three cases cited above have been overruled, or otherwise weakened as authority. This is a misapprehension, as will be seen from the able dissenting opinion of Sherwood, J., in *State v. Pond, supra.* Another thing worthy of mention in this connection is that the opinions much relied upon in the majority opinion, in the cases of *State v. Circuit Court of Gloucester Co., State v. Pond,* and *Feek v. Township Board,* were rendered by divided courts, there being able dissenting opinions in each of these cases.

III.    It is said that this question is settled by our own decisions, though it is conceded that "statements have been made in some of the earlier opinions of this court, somewhat at variance with the views herein expressed." The concession was very proper, as, in my

judgment, the rule I contend for has found frequent recognition in the opinions of this court. In fact, as I read the cases, there have never been but one or two departures from the rule. One was in the case of *Dalby v. Wolf*, 14 Iowa, 228, wherein an attempt was made to distinguish that case from the line of cases before that decided by the court. It was said in *Weir v. Cram*, 37 Iowa, 653: "In the one case the people of the counties are permitted to make certain local police regulations, to have the force of law; in the other, a law is enacted by the legislature which can have no force in any county until sanctioned by the vote of the people thereof." It occurs to me that the attempted distinction is more imaginary than real. Furthermore, I have endeavored to show that in fact the act in question can and does have no force without the action of the people. Upon a careful examination of the cases of *City of Des Moines v. Hillis*, 55 Iowa, 643; *Morford v. Unger*, 8 Iowa, 82; and *State v. King*, 37 Iowa, 462,—it will appear that none of them came properly within the rule applicable to the case at bar. It has always been held permissible to delegate to municipal corporations certain powers of legislation. So it is not disputed that the legislature may make a grant of power, as of a charter (in the absence of constitutional prohibition), the acceptance of which might involve certain liabilities, and such acceptance may be conditioned upon a vote of the people. Nor do I dispute that administrative powers may be granted to a municipality, dependent upon a vote of the people. The case of *Weir v. Cram*, 37 Iowa, 653, is, in principle, like that at bar. The act (stock act) was made to depend on the vote of the people, and was held unconstitutional. The rule I contend for has found frequent recognition in cases from this state heretofore cited. But, whatever construction may be placed upon some of the decisions of this

court which seem to sustain the views of the majority, I am unwilling to recognize or give effect to a rule which I deem so plainly in violation of the constitution. I have discussed but one objection to this law,— that it was an unwarranted delegation of the lawmaking power. I think there are other and all-sufficient reasons for holding it unconstitutional, but I am admonished that the length of this opinion precludes their consideration. Nor is it necessary, as, for the reason that it is a delegation of legislative power, the act is void. I do not wish to be understood as now passing upon the question as to whether the taxing features of this act may be upheld, notwithstanding the void provisions of the act which I have been considering. If the law, as to the tax provisions, should be held constitutional, it would add those provisions to the existing prohibitory law. That question is not discussed on this appeal, and it will be time enough to pass upon it when it is properly raised. What I do hold is that in so far as the act undertakes to submit to the people, by petition, the question as to whether it shall become effective, and enables them by such petition, and other action contemplated in the act to be based thereon, to repeal the existing prohibitory laws, and legalize and license the sale of intoxicating liquors, it is unconstitutional, as a clear evasion of legislative responsibility, and a delegation of the power to pass laws, which rests exclusively in the legislature. Let it be understood that I have no doubt of the power of the legislature to pass a general license law or a general prohibitory law, but I affirm that they cannot pass such a law, and make its taking effect dependent upon a vote or petition of the people. I think the rule of the majority opinion is full of peril, opens wide the door, and invites members of the legislature to put aside the discharge of the duties properly devolving upon them,

removes the personal responsibility which, under our form of government must ever rest upon the law-making power, and takes away the constitutional safeguards against unwise, ill considered, and hasty legislation. In brief, it is a long step towards a government of the town meeting, and tends strongly to encourage the very evils in legislation which our representative form of government was created to correct. The judgment below should be *reversed*.